**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BELICIA CRUZ, *individually and on behalf of all others similarly situated*, | Case No. 1:22-cv-01966 |
| Plaintiff, | Hon. Sharon Johnson Coleman |
| v. | Magistrate Judge Gabriel A. Fuentes |
| THE CONNOR GROUP, A REAL ESTATE INVESTMENT FIRM, LLC, | |
| Defendant. | |

**DECLARATION OF PHILIP L. FRAIETTA IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARD**

I, Philip L. Fraietta, declare as follows:

1.      I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I make this declaration in support of Plaintiff's Unopposed Motion for Attorneys' Fees, Costs, Expenses, and Service Award, filed herewith.  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

2.      I am a member in good standing of the bar of this Court and a member of the bar in good standing of the New York, New Jersey, and Michigan Bars; the United States District Courts for the Southern District of New York, Eastern District of New York, Northern District of New York, Western District of New York, Central District of Illinois, District of New Jersey, Eastern District of Michigan, and Western District of Michigan; and the United States Court of Appeals for the Second, Third,  Sixth, and Ninth Circuits.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of the Parties' Class Action Settlement Agreement, and the exhibits attached thereto.

4.      On February 28, 2022, Plaintiff filed a Class Action Complaint in the Circuit Court of Kane County, Illinois against The Connor Group, A Real Estate Investment Firm, LLC ("Defendant").  The material allegations of the Complaint were that TCG collected or captured fingerprints or hand scans of its current and former Illinois employees and temporary workers without first providing notice, obtaining informed written consent or making a biometric data retention and destruction policy publicly available.  The Complaint alleges these individuals were required to "clock in" with their alleged fingerprints and/or hand scans, in violation of the Illinois Biometric Privacy Act ("BIPA" or "Privacy Act"), 740 ILCS 14/1 *et seq*.

5.      On April 15, 2022, TCG removed the Action to the United States District Court for the Northern District of Illinois (the "District Court"), where it was assigned Case No. 1:22-cv-01966.  *See* ECF No. 1.

6.      From the outset of the case, the Parties discussed the prospect of an early resolution of this matter and, as part of their obligations under Fed. R. Civ. P. 26, engaged in direct settlement discussions, which included the informal exchange of relevant information surrounding the alleged claims.  Those discussions eventually led to a period of active, private settlement negotiations between the Parties beginning in April 2022 that continued over the next several months.

7.      Given that the information exchanged during the parties' private settlement negotiations would have been, in large part, the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.

8.      On April 21, 2022, TCG filed, with Plaintiff's agreement, an Unopposed Motion for an Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint, requesting

that the Court extend its deadline to file a responsive pleading by 28 days, until May 19, 2022.  *See* ECF No. 8.  The Court granted TCG's Unopposed Motion the same day.  *See* ECF No. 10.

9.      On May 17, 2022, TCG filed a Second Unopposed Motion for an Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint, requesting, with Plaintiff's agreement and for the purpose of facilitating settlement discussions, that the Court extend its deadline to file a responsive pleading by an additional 45 days, until July 3, 2022.  *See* ECF No. 11.  The Court granted TCG's Unopposed Motion the same day.  *See* ECF No. 12.

10.     The Parties continued to engage in settlement discussions over the next three weeks.  Those efforts ultimately led to a settlement on the terms set forth in this Agreement. Finally, toward the end of June 2022, the Parties reached an agreement on all material terms of a class action settlement of this case.

11.     Thereafter, the Parties drafted and executed the Settlement Agreement and related documents.

12.     The resulting Proposed Settlement of $237,600 secures extraordinary relief for the class.  Based on Defendant's records the proposed Settlement Class includes 264 individuals who registered for or used a fingertip or hand scan timekeeping system in connection with their employment with or assignment to Defendant from February 28, 2017, to and through April 8, 2022, and who have not signed a general release of claims as to Defendant.

13.     Pursuant to the terms of the Proposed Settlement, every Settlement Class Member will <u>automatically</u> receive a cash payment from the net Settlement Fund by check – which Proposed Class Counsel estimates will be approximately $563 – unless he or she excludes him or herself from the Settlement.  *See* Settlement Agreement ¶ 2.1(b)-(d).

14.     Moreover, as part of the Proposed Settlement, Defendant has acknowledged that it

will provide all notices and consent as required by BIPA if the biometric time function is ever

reinstated. *See* Settlement Agreement ¶ 2.2.

15.     A true and correct copy of the firm resume of Bursor & Fisher, P.A. is attached

hereto as **Exhibit 2**. Bursor & Fisher, P.A. is well suited to continue to represent Plaintiff and

Settlement Class in this matter.

16.     My firm, Bursor & Fisher, P.A., has extensive experience litigating class actions

of similar size, scope, and complexity to the instant action. We were appointed Class Counsel in

similar employee fingerprint BIPA actions such as *Jenkins, et al. v. Charles Industries, LLC*,

Case No. 2021L001047 (Cir. Ct. DuPage Cnty.); *Suren, et al. v. DSV Solutions, LLC*, Case No.

2021CH000037 (Cir. Ct. DuPage Cnty.); *Isaacson v. Liqui-Box Flexibles, LLC, et al.*, Case No.

2021CH000099 (Cir. Ct. Will Cnty.); *Landreth v. Verano Holdings LLC, et al.*, Case No.

2020CH06633 (Cir. Ct. Cook Cnty.); *Sahlin v. Hospital Housekeeping Systems, LLC*, Case No.

2021L28 (Cir. Ct. Williamson Cnty.). We are also lead counsel in over 20 BIPA putative class

actions currently pending in Illinois. We have also been appointed Class Counsel in a number of

state-law based privacy class actions in the past few years. *See, e.g.*, *Edwards v. Hearst

Communications, Inc.*, Case No. 15-cv-03934 (S.D.N.Y.) ($50 million class wide settlement);

*Ruppel v. Consumers Union of United States Inc.*, Case No. 16-cv-02444 (S.D.N.Y.) ($16.375

million class wide settlement); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*,

Case No. 15-cv-05671 (S.D.N.Y.) ($13.75 million class wide settlement); *Taylor v. Trusted

Media Brands, Inc.*, Case No. 16-cv-01812 (S.D.N.Y.) ($8.225 million class wide settlement);

*Moeller v. American Media, Inc.*, Case No. 16-cv-11367 (E.D. Mich.) ($7.6 million class wide

settlement); *Kokoszki v. Playboy Enterprises, Inc.*, Case No. 19-cv-10302 (E.D. Mich.) ($3.85

million class wide settlement). Notably, in *Hearst*, we secured a victory on summary judgment

for the named plaintiff. *See Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017).

17.     In addition, my firm has also been recognized by courts across the country for its expertise. *See* Ex. B; *see also, e.g.*, *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. 2014) (Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five[1] class action jury trials since 2008."); *Williams v. Facebook, Inc.*, Case No. 3:18-cv-01881, ECF No. 51 (N.D. Cal June 26, 2018) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of all persons who installed Facebook Messenger applications and granted Facebook permission to access their contact list).

18.     Moreover, my firm has served as trial counsel for class action plaintiffs in six jury trials and has won all six, with recoveries ranging from $21 million to $299 million.  Most recently, in May 2019, we secured a jury verdict for over $267 million in a TCPA case in the Northern District of California.  *See Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020).

19.     The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's-length and with the assistance of a neutral mediator.

20.     Plaintiff and proposed Class Counsel recognize that despite our belief in the

---

[1] Bursor & Fisher has since won a sixth jury verdict in *Perez v. Rash Curtis & Associates*, Case No. 4:16-cv-03396-YGR (N.D. Cal.), for $267 million.

strength of Plaintiff's claims, and Plaintiff's and the Class's ability to ultimately secure a favorable judgment at trial, the expense, duration, and complexity of protracted litigation would be substantial and the outcome of trial uncertain.

21.     Plaintiff and proposed Class Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive Plaintiff and the Settlement Class Members of any potential relief whatsoever.  Defendant is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case, including by moving for summary judgment after discovery.  Plaintiff and Class Counsel are also aware that Defendant would continue to challenge liability, as well as assert a number of defenses, including but not limited to whether Defendant actually possessed biometric information or biometric identifiers and whether claims are barred by the applicable statute of limitations.  The viability of the latter defense is currently the subject of at least three pending appellate cases. *See Tims v. Black Horse Carriers, Inc.*, Case No. 127801 (IL Sup. Ct.) (statute of limitations); *Marion v. Ring Container Technologies, LLC*, Case No. 3-20-0184 (IL App. Ct. 3d Dist.) (statute of limitations); *Cothron v. White Castle System, Inc.*, -- F.4th --, 2021 WL 5998537, at *7-8 (7th Cir. Dec. 20, 2021) (certifying accrual of statute of limitations question to Illinois Supreme Court).  If successful, the statute of limitations defense would result in a substantial portion of the proposed Settlement Class receiving no payment or relief whatsoever.

22.     Looking beyond trial, Plaintiff is also keenly aware that Defendant could appeal the merits of any adverse decision, and that, in light of the statutory damages in play, it would argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.

23.     Attached hereto as **Exhibit 3** are my firm's detailed billing diaries for this matter, as well as a summary of the same.  I have personally reviewed all of my firm's time entries associated with this case and have used billing judgment to ensure that duplicative and unnecessary time has been excluded and that only time reasonably devoted to the litigation has been included.  My firm's time entries were regularly and contemporaneously recorded by me and the other timekeepers pursuant to firm policy and have been maintained in the computerized records of my firm.

24.     My firm undertook this matter on a contingency basis.  Thus far, my firm has expended 52.3 hours in this case.  My firm's lodestar in this case, based on current billing rates, is $28,873.16.

25.     In addition to the time enumerated above, I estimate that my firm will incur an additional 50-75 hours of future work in connection with the preparation of Plaintiff's Motion for Final Approval, the fairness hearing, coordinating with Analytics Consulting, LLC, monitoring settlement administration, and responding to Settlement Class Member inquiries.

26.     Due to the commitment of time and capital investment required to litigate this action, my firm had to forgo other work, including hourly non-contingent matters, and other class action matters.

27.     To date, my firm has also expended $643.16 in out-of-pocket costs and expenses in connection with the prosecution of this case.  These costs and expenses are reflected in the records of my firm and attached hereto as **Exhibit 3** and were necessary to prosecute this litigation.  Costs and expenses items are billed separately, and such charges are not duplicated in my firm's billing rates.

28.     Included with **Exhibit 3** is a chart setting forth the hourly rates charged for

lawyers and staff at my firm at the time the work was completed. Based on my knowledge ad experience, the hourly rates charged by my firm are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise. As a matter of firm policy, we do not discount our regular hourly rates for non-contingent hourly work. I have personal knowledge of the range of hourly rates typically charged by counsel in our field in New York, California, Florida, and elsewhere, both on a current basis and in the past. In determining my firm's hourly rates from year to year, my partners and I have consciously taken market rates into account and have aligned our rates with the market.

29.     No court has ever cut my firm's fee application by a single dollar on the ground that our hourly rates were not reasonable.

30.     Plaintiff and proposed Class Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the Settlement is fair, reasonable, and adequate, and well within the range of approval.

31.     There are no agreements made in connection with the settlement proposal other than the Settlement Agreement.

32.     Plaintiff was extensively involved in the case, including by helping her attorneys investigate her claims, preparing and reviewing the Class Action Complaint, and conferring with her counsel throughout the litigation, including the settlement process.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 19th day of December 2022 at New York, New York.

*/s Philip L. Fraietta*
Philip L. Fraietta

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

BELICIA CRUZ, *individually and on behalf of all others similarly situated*,

     Plaintiff,

 v.

THE CONNOR GROUP, A REAL ESTATE INVESTMENT FIRM, LLC,

     Defendant.

Case No. 1:22-cv-01966

Hon. Sharon Johnson Coleman

Hon. Magistrate Gabriel A. Fuentes

## CLASS ACTION SETTLEMENT AGREEMENT

This Agreement ("Agreement" or "Settlement Agreement") is entered into by and among (i) Plaintiff Belicia Cruz ("Plaintiff"); (ii) the Settlement Class (as defined herein) (together with Plaintiff, the "Plaintiffs"); and (iii) Defendant The Connor Group, A Real Estate Investment Firm, LLC ("Defendant" or "TCG") (together with Plaintiff, the "Parties"). This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Agreement, and subject to the final approval of the Court.

## RECITALS

A.  On February 28, 2022, Plaintiff filed one-count putative class action complaint against TCG in the Circuit Court of Kane County, Illinois, Sixteenth Judicial Circuit, entitled *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, Case No. 2022-CH-000020 (the "Action"). The material allegations of the Complaint were that TCG collected or captured fingerprints or hand scans of its current and former Illinois employees and temporary workers without first providing notice, obtaining informed written consent or making a biometric data retention and destruction policy publicly available. The Complaint alleges these individuals were

required to "clock in" with their alleged fingerprints and/or hand scans, in violation of the Illinois Biometric Privacy Act ("BIPA" or "Privacy Act"), 740 ILCS 14/1 *et seq.*

B.      On April 15, 2022, TCG removed the Action to the United States District Court for the Northern District of Illinois (the "District Court"), where it was assigned Case No. 1:22-cv-01966. *See* ECF No. 1.

C.      From the outset of the case, the Parties engaged in direct communications, and as part of their obligations under Fed. R. Civ. P. 26, discussed the prospect of an early resolution. Those discussions eventually led to a period of active, private settlement negotiations between the Parties beginning in April 2022 that continued over the next several months.

D.      On April 21, 2022, TCG filed, with Plaintiff's agreement, an Unopposed Motion for an Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint, requesting that the Court extend its deadline to file a responsive pleading by 28 days, until May 19, 2022. *See* ECF No. 8. The Court granted TCG's Unopposed Motion the same day. *See* ECF No. 10.

E.      On May 17, 2022, TCG filed a Second Unopposed Motion for an Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint, requesting, with Plaintiff's agreement and for the purpose of facilitating settlement discussions, that the Court extend its deadline to file a responsive pleading by an additional 45 days, until July 3, 2022. *See* ECF No. 11. The Court granted TCG's Unopposed Motion the same day. *See* ECF No. 12.

F.      The Parties continued to engage in settlement discussions over the next three weeks. Those efforts ultimately led to a settlement on the terms set forth in this Agreement. Ultimately, toward the end of June 2022, the Parties reached an agreement to settle this case.

G.      In total, the Parties engaged in active, good faith settlement negotiations over the course of several months, which at all times were at arms' length.

H.     On June 30, 2022, before TCG's responsive pleading was due to be filed, the Parties filed a Joint Motion to Stay Proceedings pending the outcome of class action settlement approval proceedings, indicating that the Parties had reached an agreement in principle to resolve this Action on a class-wide basis and are in the process of memorializing the terms in a settlement agreement and preparing the Motion for Preliminary Approval of the Settlement.  *See* ECF No. 14. Accordingly, to allow the Parties to focus their efforts on finalizing the settlement and prevent additional and potentially unnecessary expense to either party, the Parties requested that the Court enter an Order staying the proceedings in their entirety, including TCG's deadline to file a responsive pleading, except for deadlines associated with seeking approval of the class action settlement.  *Id*.

I.     On July 1, 2022, the District Court entered an order granting the Parties' joint motion to stay and vacated the telephone status hearing previously set for July 14, 2022.  *See* ECF No. 15.

J.     At all times, TCG has denied and continues to deny any wrongdoing whatsoever, denies that it committed, or threatened or attempted to commit, any wrongful act or violation of the Privacy Act, and denies that certification of a litigation class is necessary or proper. Accordingly, any references to alleged Privacy Act violations or business practices of TCG in this Agreement, any settlement document, or the related Court hearings and processes will raise no inference with respect to the propriety of those business practices or any other business practices of TCG.  Nonetheless, taking into account the uncertainty and risks inherent in any litigation and the desire to avoid the expenditure of further legal fees and costs, TCG has concluded it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement to avoid further expense, inconvenience, and burden.  This Agreement is a compromise, and the Agreement, any related documents, and any

3

negotiations resulting in it shall not be construed as or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of TCG, or any of the Released Parties (defined below), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever or with respect to the certifiability of a litigation class.

K.      Plaintiff believes that the claims asserted in the Action against TCG have merit and that they would have prevailed at summary judgment and/or trial. Nonetheless, Plaintiff and Class Counsel recognize that TCG has raised factual and legal defenses that present a risk that Plaintiff may not prevail. Plaintiff and Class Counsel also recognize the expense and delay associated with continued prosecution of the Action against TCG through class certification, summary judgment, trial, and any subsequent appeals. Plaintiff and Class Counsel also have taken into account the uncertain outcome and risks of litigation, especially in complex class actions, as well as the difficulties inherent in such litigation. Therefore, Plaintiff believes it is desirable that the Released Claims, as further defined herein, be fully and finally compromised, settled, and resolved with prejudice. Based on its evaluation, Class Counsel has concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

L.      TCG maintains that it has a number of meritorious defenses to the claims asserted in this action, and that TCG would prevail in this matter on summary judgment or at trial. TCG denies any wrongdoing and any liability to Plaintiff and the Settlement Class whatsoever. TCG also denies that class certification is warranted or appropriate. Nevertheless, TCG recognizes the risks and uncertainties inherent in litigation, the significant expense associated with defending class actions, the costs of any appeals, and the disruption to business operations arising out of class action litigation. TCG also recognizes the risks that a trial on class-wide claims might present.

4

Accordingly, TCG believes that the Settlement set forth in the Agreement is likewise in the best interests of all parties involved.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among Plaintiff, the Settlement Class, and each of them, and TCG, by and through its undersigned counsel that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, in consideration of the benefits flowing to the Parties from the Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

<u>**AGREEMENT**</u>

**1.     DEFINITIONS.**

As used in this Settlement Agreement, the following terms have the meanings specified below:

**1.1     "Action"** means *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, Case No. 1:22-cv-01966, pending in the United States District Court for the Northern District of Illinois.

**1.2     "Alternate Judgment"** means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Agreement and where none of the Parties elects to terminate this Settlement by reason of such variance.

**1.3     "Biometric Data"** means a Settlement Class Member's biometric identifier and biometric information as defined in 740 ILCS 14/10.

**1.4     "BIPA"** or the "Privacy Act" shall mean the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*

1.5 **"Cash Award"** means the cash compensation, payable by the Settlement Administrator from funds provided by Defendant on a *pro rata* basis, that each Settlement Class Member who has not opted-out of the Settlement shall be entitled to receive, which estimated amount shall be specified in the Notice. Settlement Class Members shall receive payment via check.

1.6 **"Class Counsel"** means Philip L. Fraietta, Joseph I. Marchese, and Julia K. Venditti of Bursor & Fisher, P.A.

1.7 **"Class List"** means an electronic list or lists from Defendant's available records that includes the names and last known U.S. Mail addresses and email addresses, to the extent available, belonging to Persons within the Settlement Class, which shall be provided to the Settlement Administrator in accordance with Paragraph 4.1(a).

1.8 **"Class Period"** means the period of time from February 28, 2017, to and through April 8, 2022.

1.9 **"Class Representative"** means Belicia Cruz, the named Plaintiff in this Action.

1.10 **"Court"** means the Honorable Sharon Johnson Coleman of the United States District Court for the Northern District of Illinois.

1.11 **"Defendant" or "TCG"** means The Connor Group, A Real Estate Investment Firm, LLC, the Defendant in this Action.

1.12 **"Defendant's Counsel" or "TCG's Counsel"** means Greenberg Traurig, LLP.

1.13 **"Effective Date"** means the date ten (10) days after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

1.14 **"Fee Award"** means the amount of attorneys' fees and reimbursement of costs and expenses awarded by the Court to Class Counsel.

**1.15** **"Final"** when not used in combination with any other term defined herein, means one business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Approval Order; or (ii) if there is any appeal or appeals, the day after all appeals are resolved in favor of Final Approval and no further appeals are possible.

**1.16** **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, the Fee Award, and the incentive award to the Class Representative.

**1.17** **"Final Judgment"** means the Final Judgment and Order to be entered by the Court approving the Agreement after the Final Approval Hearing.

**1.18** **"Net Settlement Fund"** means the amount of the Settlement Fund remaining after payment of claims administration and notice costs, incentive award to the Class Representative, and the Fee Award.

**1.19** **"Notice"** means the notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be sent to the Settlement Class substantially in the manner set forth in this Agreement, consistent with the requirements of Due Process, 735 ILCS 5/2-803, and substantially in the form of Exhibit A hereto.

**1.20** **"Notice Date"** means the date by which the Notice set forth in Paragraph 4.1 is complete, which shall be no later than twenty-eight (28) days after Preliminary Approval.

**1.21** **"Objection/Exclusion Deadline"** means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Class must be made, which shall be designated as a date no later than forty-five (45) days after the Notice Date and no sooner than fourteen (14) days after papers supporting the Fee Award are filed

with the Court and posted to the settlement website listed in Paragraph 4.1(d), or such other date as ordered by the Court.

**1.22** **"Person"** shall mean, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouse, parent, child, guardian, associate, co-owners, heirs, predecessors, successors, representatives, or assigns. "Person" is not intended to include any governmental agencies or governmental actors, including, without limitation, any state Attorney General office.

**1.23** **"Plaintiffs"** means Belicia Cruz and the Settlement Class Members.

**1.24** **"Preliminary Approval"** means the Court's conditional certification of the Settlement Class for settlement purposes, preliminary approval of this Settlement Agreement, and approval of the form and manner of the Notice.

**1.25** **"Preliminary Approval Order"** means the Order preliminarily approving the Settlement Agreement conditionally certifying the Settlement Class for settlement purposes, and directing notice thereof to the Settlement Class.

**1.26** **"Released Claims"** means any and all claims or causes of action for actual damages, liquidated damages, penalties, injunctive relief, declaratory relief, attorneys' fees and costs, expenses and interest, liabilities, demands, or lawsuits against the Released Parties (defined below) under the Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*, and all other related federal, state, and local laws, including the common law, whether known or unknown, whether legal, statutory, equitable, or of any other type or form, and whether brought in an individual, representative, or any other capacity, of every nature and description whatsoever that were or could

have been brought in any of the actions filed (or to be filed) by Plaintiff and the Settlement Class Members.

  **1.27** **"Released Parties"** means Defendant and its current and former affiliates, parents, subsidiaries, divisions, joint venturers, officers, directors, shareholders, agents, representatives, employees, attorneys, insurers, benefit plans, predecessors and successors.

  **1.28** **"Releasing Parties"** means Plaintiff, those Settlement Class Members who do not timely opt out of the Settlement Class, and all of their respective present or past heirs, spouses, parents, children, guardians, associates, co-owners, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, limited liability companies, partnerships and corporations.

  **1.29** **"Settlement Administration Expenses"** means the expenses incurred by the Settlement Administrator in providing Notice, processing claims, responding to inquiries from members of the Settlement Class, mailing checks for Approved Claims, and related services, paying taxes and tax expenses related to the Settlement Fund (including all federal, state or local taxes of any kind and interest or penalties thereon, as well as expenses incurred in connection with determining the amount of and paying any taxes owed and expenses related to any tax attorneys and accountants).

  **1.30** **"Settlement Administrator"** means Analytics Consulting, LLC, or such other reputable administration company that has been selected by Class Counsel and reasonably acceptable to TCG and approved by the Court to perform the duties set forth in this Agreement,

including but not limited to overseeing the distribution of Notice, as well as the processing and payment of Approved Claims to the Settlement Class as set forth in this Agreement, and disbursing all approved payments out of the Settlement Fund, and handling the determination, payment and filing of forms related to all federal, state and/or local taxes of any kind (including any interest or penalties thereon) that may be owed on any income earned by the Settlement Fund.

1.31    **"Settlement Class"** means all individuals who worked or are currently working for Defendant in the State of Illinois, including current or former temporary workers or contractors engaged by Defendant, who had their Biometric Identifiers and/or Biometric Information allegedly collected, captured, received, or otherwise obtained or disclosed by Defendant or its agents, without first signing a written consent form, for the period extending from February 28, 2017, to and through the date of the Preliminary Approval Order.  Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) Persons who properly execute and file a timely request for exclusion from the class; and (3) the legal representatives, successors or assigns of any excluded Persons.

1.32    **"Settlement Class Member"** means a Person who falls within the definition of the Settlement Class.

1.33    **"Settlement Fund"** means the non-reversionary cash fund that shall be established by the Settlement Administrator and funded by TCG in the total amount of two hundred thirty-seven thousand and six hundred dollars ($237,600 USD), according to the schedule set forth herein.  From the Settlement Fund, the Settlement Administrator shall pay all Approved Claims made by Settlement Class Members, Settlement Administration Expenses, any incentive award to the Class Representative, any Fee Award to Class Counsel, and any other costs, fees or expenses approved by the Court.  The Settlement Administrator shall be granted permission to access said funds as set forth herein.   The Settlement Administrator shall be responsible for all tax filings with

10

respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. The Settlement Fund represents the total extent of TCG's monetary obligations under this Agreement. The payment of the Settlement Amount by TCG fully discharges TCG and the other Released Parties' financial obligations (if any) in connection with the Settlement, meaning that no Released Party shall have any other obligation to make any payment to any Class Member, or any other Person, under this Agreement. The total monetary obligation with respect to this Agreement shall not exceed two hundred thirty-seven thousand and six hundred dollars ($237,600 USD), unless the final count of Settlement Class Members on the Class List following de-duplication by the Settlement Administrator is not 264 Persons, in which case Defendant shall either increase or decrease the Settlement Fund by an amount proportionate to the final count of Settlement Class Members (*i.e.*, nine hundred dollars ($900) multiplied by the final count of Settlement Class Members).

1.34 **"Unknown Claims"** means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement.

## 2. SETTLEMENT RELIEF.

### 2.1 Payments to Settlement Class Members.

**(a)** Within thirty (30) days after the Court enters the Preliminary Approval Order and the Settlement Administrator provides TCG with the information needed to transfer funds to the Settlement Fund, whichever is later, TCG shall fund eight thousand and ninety-one dollars ($8,091) for notice and settlement administration to the Settlement Fund established by the Settlement Administrator. No later than thirty (30) days after the Effective Date of the Settlement,

TCG shall transfer the remainder of the Settlement Fund, less the amount already transferred for Settlement Administration to the Settlement Fund established by the Settlement Administrator.

(b)     Each Settlement Class Member who does not object to, or opt out of, the settlement shall receive as a Cash Award a *pro rata* portion of the Settlement Fund, calculated by the Settlement Administrator, after deducting all Settlement Administration Expenses, any Fee Award to Class Counsel, any service award to the Class Representative, and any other costs, fees, or expenses approved by the Court, unless the Settlement Class Member excludes himself or herself from the Settlement.

(c)     Except for any Settlement Class Member for whom the Settlement Administrator is unable to identify a postal address or e-mail address that it determines is reasonably likely to be the current place of residence (or an active e-mail address) for such Settlement Class Member, after taking measures reasonably necessary to identify such an address (as detailed further in Paragraph 4.1(b)), each Settlement Class Member will be sent via U.S. postal mail (and/or e-mail to the extent a postal address is unavailable for a Settlement Class Member) a copy of the Class Notice, which will also indicate the estimated amount of the Cash Award that the Settlement Class Member will be paid upon final approval of the Settlement unless the Settlement Class Member opts out of the Settlement.

(d)     After final approval of the Settlement, a direct payment by check will be made to each Settlement Class Member who did not exclude himself or herself for whom at least one postal address has been identified by the Settlement Administrator that the Settlement Administrator concludes is reasonably likely to reflect the current residence of such Settlement Class Member, after taking measures reasonably necessary to identify such an address, as set forth more fully in Paragraph 4.1(b); to the extent multiple such postal addresses are identified by the Settlement Administrator for a particular Settlement Class Member, such check shall be sent to

the address that the Settlement Administrator concludes is the most likely among such multiple addresses to reflect the current residence of such Settlement Class Member.  The foregoing direct payment procedure shall apply for all Settlement Class Members for whom a postal address has been identified unless the Settlement Class Member submits an updated address to which their check should be sent on a web-based form on the Settlement Website, in which case such check will be sent to the updated address that was provided.

      **(e)**     Each check issued will state on its face that the check will expire and become null and void unless cashed within ninety (90) days of the date of issuance.  To the extent that a check issued to a Settlement Class Member is not cashed within 90 days after the date of issuance (which issuance shall be no sooner than five (5) days prior to such check's mailing), the check will be void.  Payments to all Settlement Class Members who do not exclude themselves from the Settlement shall be made within twenty-eight (28) days after the Effective Date of the Settlement Agreement.

      **(f)**     To the extent that any checks issued to a Settlement Class Member are not cashed within ninety (90) days after the date of issuance, such uncashed check funds shall , subject to Court approval, shall be paid to the Chicago Legal Clinic, a non-sectarian, not-for-profit organization.

    **2.2**    **Prospective Relief**

      **(a)**     TCG represents that it has provided and will continue to provide all notices and consents as required by BIPA, to the extent it collects, utilizes or stores Biometric Data.

**3.**    **RELEASE.**

    **3.1**    The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

**3.2**     Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.

**4.     NOTICE TO THE CLASS.**

**4.1**     The Notice Plan shall consist of the following:

**(a)**     *Settlement Class List.*

(i)     No later than fourteen (14) business days after entry of an order granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement, TCG will provide Plaintiff's Counsel with a copy of the electronic list that includes anonymized names of all persons within the Settlement Class.

(ii)     No later than twenty-eight (28) days after the full execution of the final Settlement Agreement, TCG shall produce the Class List to the Settlement Administrator with a copy to Class Counsel.

(iii)     Requests by individuals outside the Settlement Class List for inclusion in the Settlement Class will be brought to TCG's attention for its review and determination by the Settlement Administrator and/or Class Counsel.

**(b)**     *Method for Providing Notice.*

i.     The Notice shall provide information to each Settlement Class Member regarding (a) the specific amount of the Cash Award that will be paid to each Settlement Class Member upon final approval; (b) the amount of the incentive award and the Fee Award to be requested by Plaintiff and Class Counsel; (c) the Objection/Exclusion Deadline and the requirements and process for filing an objection to or a request for exclusion from the Settlement; and (d)

14

the URL of the Settlement Website, where additional information and documents concerning the Settlement may be obtained.

      **ii.**    The U.S. Mail addresses and/or email addresses contained on the Class List are presumptively accurate, and the Settlement Administrator shall not be required to independently verify U.S. Mail addresses and/or email addresses contained on the Class List. To the extent the Class List does not contain a U.S. Mail address and/or email address for a Class Member, or the Settlement Administrator has an independent basis to conclude there is a reasonably likelihood the U.S. Mail address and/or email address on the Class List is not valid (*e.g.* the address is incomplete or the notice is returned), the Settlement Administrator shall take measures reasonably necessary to identify such an address.

      **iii.**    For every Settlement Class Member for whom the Settlement Administrator has been able to identify a postal address that it concludes has a reasonable likelihood of reflecting the current residence of such Settlement Class Member, as identified by the Settlement Administrator after taking measures reasonably necessary to identify such an address, the Settlement Administrator shall send the Notice to the Settlement Class Member at such address via postal mail.

      **iv.**    For any Settlement Class Member for whom the Settlement Administrator is unable to identify at least one postal address that it concludes has a reasonable likelihood of reflecting the current residence of such Settlement Class Member, the Notice will be delivered to any and all e-mail addresses specified in the Class List or otherwise identified by the Settlement Administrator

15

as being reasonably likely to belong to such Settlement Class Member (after taking measures reasonably necessary to identify such e-mail address(es)).

   **v.**  If any Notice sent to a Settlement Class Member is returned as undeliverable, the Settlement Administrator shall redeliver the Notice to any alternative postal address(es) identified by the Settlement Administrator as having a reasonable likelihood of being the current place of residence for such Settlement Class Member (or, if none is available, to any e-mail address(es) believed to belong to the Settlement Class Member), after taking measures reasonably necessary to locate such addresses.

  **(c)**  *Settlement Website.* Within ten (10) days from entry of the Preliminary Approval Order, Notice shall be provided on a website at an available settlement URL (such as, for example, www.CruzBIPAsettlement.com) which shall be obtained, administered and maintained by the Settlement Administrator. The Notice provided on the Settlement Website shall be substantially in the form of Exhibit A hereto.

  **4.2**  The Notice shall advise the Settlement Class of their rights, including the rights to be excluded from, or object to, the Settlement Agreement or any of its terms. The Notice shall specify that any objection to the Settlement Agreement, and any papers submitted in support of said objection, shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making the objection files notice of an intention to do so and at the same time (a) files copies of such papers he or she proposes to be submitted at the Final Approval Hearing with the Clerk of the Court, or alternatively, if the objection is from a Class Member represented by counsel, files any objection through the Court's electronic filing system, and (b) sends copies of such papers by mail, hand, or overnight delivery service to Class Counsel and TCG's Counsel.

**4.3**     Any Settlement Class Member who intends to object to this Agreement must present the objection in writing, which must be personally signed by the objector, and must include:  (1) the objector's name and address; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection (the "Objecting Attorneys"); and (5) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court).

**4.4**     If a Settlement Class Member or any of the Objecting Attorneys has objected to any class action settlement where the objector or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption and amount of payment received.

**4.5**     A Settlement Class Member may request to be excluded from the Settlement Class by sending a written request postmarked on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.  To exercise the right to be excluded, a Person in the Settlement Class must timely send a written request for exclusion to the Settlement Administrator providing his/her name and address, a signature, the name and/or number of the case, and a clear statement that he or she wishes to be excluded from the Settlement Class for purposes of this Settlement.  A request to be excluded that does not include all of this information, does not clearly state an intention to be excluded, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person(s)

serving such a request shall be a member(s) of the Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if approved. Any member of the Settlement Class who validly elects to be excluded from this Agreement shall not: (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement. The request for exclusion must be personally signed by each Person requesting exclusion. So-called "mass" or "class" opt-outs shall not be allowed. To be valid, a request for exclusion must be postmarked or received by the date specified in the Notice.

4.6     The Final Approval Hearing shall be no earlier than ninety (90) days after the Notice described in Paragraph 4.1 is provided.

4.7     Any Settlement Class Member who does not, in accordance with the terms and conditions of this Agreement, seek exclusion from the Settlement Class shall not be entitled to receive any payment or benefits pursuant to this Agreement, but will otherwise be bound by all of the terms of this Agreement, including the terms of the Final Judgment to be entered in the Action and the Releases provided for in the Agreement, and will be barred from bringing any action against any of the Released Parties concerning the Released Claims.

5.     SETTLEMENT ADMINISTRATION.

5.1     The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and TCG's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. The Settlement Administrator shall provide Class Counsel

18

and TCG's Counsel with regular reports at weekly intervals containing information concerning Notice, administration, and implementation of the Settlement Agreement. Should the Court request, the Parties shall submit a timely report, prepared by Class Counsel and/or the Settlement Administrator and approved by TCG, to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts from the Settlement Fund paid to Settlement Class Members. Without limiting the foregoing, the Settlement Administrator shall:

(a) Upon request, forward to TCG's Counsel, with copies to Class Counsel, all original documents and other materials received in connection with the administration of the Settlement, and all copies thereof.

(b) Provide Class Counsel and TCG's Counsel with drafts of all administration related documents, including but not limited to Notices, follow-up class notices or communications with Settlement Class Members, telephone scripts in a form approved by Class Counsel and TCG's Counsel, website postings or language or other communications in a form approved by Class Counsel and TCG's Counsel with the Settlement Class, at least five (5) days before the Settlement Administrator is required to or intends to publish or use such communications, unless Class Counsel and TCG's Counsel agree to waive this requirement in writing on a case by case basis;

(c) Receive requests to be excluded from the Settlement Class and other requests and promptly provide to Class Counsel and TCG's Counsel copies thereof. If the Settlement Administrator receives any exclusion forms or other requests after the deadline for the submission of such forms and requests, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and TCG's Counsel;

(d) Provide weekly reports to Class Counsel and TCG's Counsel, including without limitation, reports regarding the number of objections and/or exclusions received.

**5.2**      In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

**5.3**      TCG, the Released Parties, and TCG's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Class Counsel, or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the allocation of net Settlement Funds to Settlement Class Members or the implementation, administration, calculation or interpretation thereof; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; or (v) the payment, reporting, or withholding of any taxes, tax expenses, or costs incurred in connection with the taxation of the Settlement Fund or the filing of any federal, state, or local returns.

**5.4**      All taxes and tax expenses shall be paid out of the Settlement Fund, and shall be timely paid by the Settlement Administrator pursuant to this Agreement and without further order of the Court. Any tax returns or reporting forms prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with this Agreement and in all events shall reflect that all taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Released Parties shall have no responsibility or liability for the acts or omissions of the Settlement Administrator or its agents with respect to the reporting or payment of taxes or tax expenses.

**6.      NO TERMINATION OF SETTLEMENT; CONTINUED GOOD FAITH NEGOTIATION.**

**6.1**      In the event that the Court reduces or does not approve Class Counsel's Petition for Fee Award, Class Counsel shall not have the right to revoke this Settlement Agreement, which

shall remain binding, and such unapproved amounts shall be returned to the Settlement Fund for distribution to the Settlement Class Members. Nothing herein shall be read to limit Class Counsel's ability to appeal a Fee Award that is less than what is sought.

If the Court does not grant preliminary or final approval of the Settlement or the Court grants preliminary or final approval by making material modifications to the terms of the Settlement Agreement, the Parties will work together in good faith to address the concerns raised in denying or modifying preliminary or final approval. If the Parties are unable to jointly agree on solutions to address the Court's concerns, then the Parties shall request the assistance of Judge Schenkier of JAMS or another mediator, if Judge Schenkier is unavailable. Notwithstanding the foregoing, if the Court makes or requires material modification to the Settlement Agreement (except for the Fee Award as set forth above, and subject to the limitation of the following sentence), including but not limited to the amount of the Settlement Fund, either party may terminate, nullify and/or void this Settlement Agreement by notifying the other party in writing. However, termination is not an option if an increase or decrease of the Settlement Fund is triggered based on a change in estimated class size, per Paragraph 1.33 above.

**7.     PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER.**

**7.1**     The Parties shall  jointly move the Court for Preliminary Approval of the settlement set forth in this Agreement; conditional certification of the Settlement Class for settlement purposes only; appointment of Class Counsel and the Class Representative; and entry of a Preliminary Approval, which order shall set a Final Approval Hearing date and approve the Notice for dissemination substantially in the form of Exhibit A hereto.

**7.2**     At the time of the submission of this Agreement to the Court as described above, the parties shall request that, after Notice is given, the Court hold a Final Approval Hearing and approve the settlement of the Action as set forth herein.

**7.3**     After Notice is given, the Parties shall request and seek to obtain from the Court a Final Judgment, which will (among other things):

**(a)**     find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Agreement, including all Exhibits thereto;

**(b)**     approve the Settlement Agreement and the proposed settlement as fair, reasonable, and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and Releasing Parties;

**(c)**     find that the Notice implemented pursuant to the Agreement (1) constitutes the best practicable notice under the circumstances; (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object to or exclude themselves from the proposed Agreement, and to appear at the Final Approval Hearing; (3) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) meets all applicable requirements of the Illinois Code of Civil Procedure, the Due Process Clause of the United States and Illinois Constitutions, and the rules of the Court;

**(d)**     conditionally find that the prerequisites for a class action under Federal Rule of Civil Procedure 23 have been satisfied for settlement purposes for the Settlement Class in that: (1) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (2) there are questions of law and fact common to the Settlement Class Members; (3) the claims of the Class Representative are typical of the claims of the Settlement Class he seeks

to represent; (4) the Class Representative has and will continue to fairly and adequately represent the interests of the Settlement Class for purposes of entering into the Settlement Agreement; (5) the questions of law and fact common to Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (6) the Settlement Class is ascertainable; and (7) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.

**(e)**    dismiss the Action (including all individual claims and Settlement Class Claims presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement;

**(f)**    incorporate the Release set forth above, make the Release effective as of the date of the Effective Date, and forever discharge the Released Parties as set forth herein;

**(g)**    permanently bar and enjoin all Settlement Class Members from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any lawsuit or other action in any jurisdiction based on the Released Claims;

**(h)**    without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose;

**(i)**    close the case; and

**(j)**    incorporate any other provisions, as the Court deems necessary and just, provided that such other provisions do not materially abridge, enlarge or modify any rights or responsibilities of the Released Parties or Settlement Class Members under this Agreement.

**7.4**    The Parties agree to stay all proceedings in the Action, other than those proceedings necessary to carry out or enforce the terms and conditions of the Settlement, until the Effective

23

Date of the Settlement has occurred. The Parties agree to use their best efforts to carry out the terms of this Settlement. At no time shall either Party or their counsel seek to solicit or otherwise encourage Settlement Class Members to submit written objections to the Settlement or requests for exclusion from the Class, or appeal from the Court's Final Judgment.

**8.    CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; INCENTIVE AWARD.**

**8.1**    TCG agrees that Class Counsel may apply for and receive from the Settlement Fund, subject to Court approval, attorneys' fees not to exceed 35% of the Settlement Fund (or eighty-three thousand, one hundred sixty dollars and zero cents ($83,160.00)), inclusive of reimbursement of reasonable costs and expenses. Plaintiff will petition the Court for an award of such attorneys' fees, costs, and expenses, and TCG agrees to not object to or otherwise challenge, directly or indirectly, Class Counsel's petition for attorneys' fees, costs, and expenses if limited to this amount. Class Counsel, in turn, agrees to seek no more than this amount from the Court in attorneys' fees, costs, and expenses. Payment of the Fee Award shall be made from the Settlement Fund.

**8.2**    The Fee Award shall be payable by the Settlement Administrator within (10) days after entry of the Court's Final Judgment and receipt by the Settlement Administrator of all payment routing information and tax I.D. numbers for Class Counsel and Class Counsel's W-9. Payment of the Fee Award shall be made from the Settlement Fund by wire transfer to Bursor & Fisher, P.A., in accordance with wire instructions to be provided by Bursor & Fisher, P.A., and completion of necessary forms, including but not limited to W-9 forms. Notwithstanding the foregoing, if for any reason the Final Judgment is reversed, vacated or rendered void or the Fee Award is reduced as a result of an appeal, then Class Counsel shall promptly return the Fee Award in full or in part to the Settlement Fund within fourteen (14) days of the court's decision.

**8.3**     TCG agrees that, subject to Court approval, it will pay an incentive award to the Class Representative from the Settlement Fund, in addition to any settlement payment pursuant to this Agreement, in the amount of up to Five Thousand Dollars and Zero Cents ($5,000.00). TCG shall not object to or otherwise challenge, directly or indirectly, Class Counsel's application for an incentive award to the Class Representative if limited to this amount. Class Counsel, in turn, agrees to seek no more than this amount from the Court as the incentive award for the Class Representative. Such incentive award shall be paid from the Settlement Fund (in the form of a check to the Class Representative that is sent care of Class Counsel), within twenty-one (21) days after the Effective Date.

**9.     CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.**

**9.1**     The Effective Date of this Settlement Agreement shall not occur until all of the following events occur, and shall be the date which falls ten (10) calendar days after the last (in time) of the following events:

**(a)**     The Parties and their counsel have executed this Agreement;

**(b)**     The Court has entered the Preliminary Approval Order;

**(c)**     The Court has entered an order finally approving the Agreement, following Notice to the Settlement Class and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment consistent with this Agreement in all material respects; and

**(d)**     The Final Judgment has become Final, as defined above, or, if the Court enters an Alternate Judgment, and neither party elects to terminate, nullify, or void this Agreement as a result of the entry of the Alternate Judgment, when such Alternate Judgment becomes Final.

**9.2**     Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, Class Counsel's request for payment of attorneys' fees, costs and/or

expenses and/or the request for incentive award payments set forth in Paragraph 8 above shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.

**10.    MISCELLANEOUS PROVISIONS.**

**10.1**    The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement, to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement, to secure final approval, and to defend the Final Judgment through any and all appeals.  Class Counsel and TCG's Counsel agree to cooperate with one another in seeking Court approval of the Settlement Agreement, entry of the Preliminary Approval Order, and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement, subject to the terms set forth herein.

**10.2**    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff, the Settlement Class and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiff or defended by TCG, or each or any of them, in bad faith or without a reasonable basis.

**10.3**    The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released.  The Parties have read and understand fully the above and foregoing agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

**10.4** Neither this Agreement nor any other settlement document, nor the settlement contained herein or any term, provision or definition therein, nor any act or communication performed or document executed in the course of negotiating, implementing or seeking approval pursuant to or in furtherance of this Agreement or the settlement:

(a) is, may be deemed, or shall be used, offered or received in any civil, criminal or administrative proceeding in any court, administrative agency, arbitral proceeding or other tribunal against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by the Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the definition or scope of any term or provision, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them. TCG, while continuing to deny all allegations of wrongdoing and disclaiming all liability with respect to all claims, considers it desirable to resolve the action on the terms stated herein to avoid further expense, inconvenience, and burden, and therefore has determined that this settlement is in TCG's best interests. Any public statements made by Plaintiff or Class Counsel will be consistent with this paragraph and Class Counsel will not issue any press release concerning this Agreement or the settlement contained herein;

(b) is, may be deemed, or shall be used, offered or received against any Released Party, as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

(c) is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing or statutory meaning as against any Released Parties, or

27

supporting the certification of a litigation class, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to enforce this Agreement. Further, if this Settlement Agreement is approved by the Court, any Party or any of the Released Parties may file this Agreement and/or the Final Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

**(d)** is, may be deemed, or shall be construed against Plaintiffs, the Settlement Class, the Releasing Parties, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

**(e)** is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs, the Settlement Class, the Releasing Parties, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's or the Settlement Class' claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

**10.5** The Parties acknowledge that (a) any certification of the Settlement Class as set forth in this Agreement, including certification of the Settlement Class for settlement purposes in the context of Preliminary Approval, shall not be deemed a concession that certification of a litigation class is appropriate, or that the Settlement Class definition would be appropriate for a litigation class, nor would TCG be precluded from challenging class certification in further

proceedings in the Action or in any other action if the Settlement Agreement is not finalized or finally approved; (b) if the Settlement Agreement is not finally approved by the Court for any reason whatsoever, then any certification of the Settlement Class will be void, the Parties and the Action shall be restored to the status quo ante, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification proceedings in the Action or in any other action; and (c) no agreements made by or entered into by TCG in connection with the Settlement may be used by Plaintiff, any person in the Settlement Class, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or any other judicial proceeding.

10.6    No person or entity shall have any claim against the Class Representative, Class Counsel, the Settlement Administrator or any other agent designated by Class Counsel, or the Released Parties and/or their counsel, arising from distributions made substantially in accordance with this Agreement.  The Parties and their respective counsel, and all other Released Parties shall have no liability whatsoever for the distribution of the Settlement Fund or the determination, administration, calculation, or payment of any claim or nonperformance of the Settlement Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

10.7    The Plaintiff, Settlement Class Members, and Class Counsel receiving funds pursuant to this Agreement shall be solely responsible for filing all information and other tax returns necessary or making any tax payments related to funds received pursuant to this Settlement Agreement.  The Released Parties provide no legal advice and make no representations to the Plaintiff, Class Members, or Class Counsel regarding the legal or tax consequences of this agreement, including any benefit or monies paid and received.  The Plaintiff, Class Members, and

Class Counsel shall be solely responsible for any tax or legal consequences for any benefit or award paid and/or received pursuant to this Agreement.

**10.8**     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

**10.9**     The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

**10.10**   The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

**10.11**    All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

**10.12**    This Agreement and its Exhibits and the Class Action Settlement Term Sheet, set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein.  No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits or the Class Action Settlement Term Sheet other than the representations, warranties and covenants contained and memorialized in such documents.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

**10.13**   Except as otherwise provided herein, each Party shall bear its own costs.

**10.14**   Plaintiff represents and warrants that he has not assigned any claim or right or interest therein as against the Released Parties to any other Person or Party and that he is fully entitled to release the same.

**10.15**    Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

**10.16**    This Agreement may be executed in one or more counterparts.  Signature by digital means, facsimile, or in PDF format will constitute sufficient execution of this Agreement.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

**10.17**    This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

**10.18**    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

**10.19**    This Settlement Agreement shall be governed by and construed in accordance with the substantive laws of the State of Illinois without giving effect to its conflicts of laws provisions.

**10.20**    This Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties.  Because all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

**10.21**    Where this Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:  Philip L. Fraietta, Bursor & Fisher, P.A., 888 Seventh Avenue, New York, NY 10019; Tiffany S. Fordyce, Greenberg Traurig, LLP, 77 West Wacker Drive, Suite 3100, Chicago, IL 60601.

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: Oct 14, 2022 , 2022

**BELICIA CRUZ**

By: _____
Belicia Cruz (Oct 14, 2022 10:26 CDT)

Belicia Cruz, individually and as representative of the Class

Dated: 10/12 , 2022

**THE CONNOR GROUP, A REAL ESTATE INVESTMENT FIRM, LLC**

By: _____

Name: Laurence Conner

Title: President

**IT IS SO STIPULATED BY COUNSEL:**

Dated: _10/14_____, 2022

**BURSOR & FISHER, PA**

By:_____

Joseph I. Marchese
jmarchese@bursor.com
Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Tel: (646) 837-7150
Fax: (212) 989-9163

Julia K. Venditti
jvenditti@bursor.com
BURSOR & FISHER, P.A.
1990 N. California Boulevard, Suite 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700

*Attorneys for Class Representative and the*
*Settlement Class*

Dated: _October 17_, 2022

**GREENBERG TRAURIG, LLP**

By:_____

Tiffany S. Fordyce
fordyceT@gtlaw.com
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: (312) 456-1031
Fax: (312) 899-0329

*Attorneys for Defendant The Connor Group, A Real*
*Estate Investment Firm, LLC*

33

# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS**
*Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, Case No. 1:22-cv-01966

IF YOU WORKED FOR THE CONNOR GROUP, A REAL ESTATE INVESTMENT FIRM, LLC ("TCG"), IN THE STATE OF ILLINOIS BETWEEN FEBRUARY 28, 2017 AND APRIL 8, 2022, AND HAD YOUR BIOMETRIC IDENTIFIERS AND/OR BIOMETRIC INFORMATION COLLECTED  BY TCG, YOU MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

*A court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against The Connor Group, A Real Estate Investment Firm, LLC ("TCG").  The class action lawsuit involves whether TCG unlawfully collected or captured Biometric Identifiers and/or Biometric Information without first providing notice, obtaining informed written consent or making a biometric data policy publicly available in violation of the Illinois Biometric Privacy Act ("BIPA" or "Privacy Act"), 740 ILCS 14/1 *et seq.*

- You are included if you worked for TCG in Illinois and had your Biometric Identifiers and/or Biometric Information allegedly collected or captured by TCG without first signing a written consent form, for the period February 28, 2017, through April 8, 2022.

- Those included in the Settlement will be eligible to receive a *pro rata* (meaning equal) portion of the Net Settlement Fund, which Class Counsel anticipates to be approximately $452 per class member.

- Read this notice carefully. Your legal rights are affected whether you act, or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You will receive a *pro rata* share of the Net Settlement benefits – estimated to be approximately $452 – and will give up your rights to sue the Defendant about the claims in this case. |
| **EXCLUDE YOURSELF** | You will receive no benefits, but you will retain any rights you currently have to sue the Defendant about the claims in this case. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. |
| **GO TO THE HEARING** | Ask to speak in Court about your opinion of the Settlement. |

These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

The Court in charge of this action has preliminarily approved the Settlement as fair, reasonable, and adequate, and must decide whether to give final approval to the Settlement.  The relief provided to Class Members will be provided only if the Court gives final approval to the Settlement and, if there are any appeals, after the appeals are resolved in favor of the Settlement.  ***Please be patient.***

# BASIC INFORMATION

## 1. Why was this Notice issued?

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

The case is pending in the United States District Court for the Northern District of Illinois. The case is called *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, Case No. 1:22-cv-01966. The person who sued is called the Plaintiff. The Defendant is TCG.

## 2. A court has not decided that TCG did anything wrong.

TCG denies any wrongdoing and maintains it has not violated BIPA or any other law. Nonetheless, TCG is willing to enter into this settlement in the interest of putting this matter behind it, and allowing the parties to move on.

## 3. What is a class action?

In a class action, one or more people called class representatives (in this case, Belicia Cruz) sue on behalf of a group or a "class" of people who have similar claims. In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the Class.

## 4. What is this lawsuit about?

This lawsuit alleges that TCG violated Illinois law by unlawfully collecting or capturing Biometric Identifiers and/or Biometric Information through its fingerprint and/or hand scan clock-in system. As noted above, TCG denies the claims in the lawsuit and contends that it did not do anything wrong and denies that class certification is warranted or appropriate. The Court did not resolve the claims or defenses raised in this action. Nor has the Court determined that TCG did anything wrong or that this matter should be certified as a class action except if the Settlement is fully approved by the Court. Rather, the Parties have, without admitting liability, agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

## 5. Why is there a Settlement?

The Court has not decided whether the Plaintiff or the Defendant should win this case. Instead, both sides agreed to a Settlement. That way, they avoid the uncertainties and expenses associated with ongoing litigation, and Class Members will get compensation sooner rather than, if at all, after the completion of a trial.

## WHO'S INCLUDED IN THE SETTLEMENT?

**6. How do I know if I am in the Settlement Class?**

The Court decided that everyone who fits the following description is a member of the **Settlement Class**:

All individuals who worked for Defendant in the State of Illinois, including temporary workers or contractors engaged by Defendant, who allegedly had their Biometric Identifiers and/or Biometric Information collected, captured, received, or otherwise obtained or disclosed by Defendant or its agents, without first signing a written consent form, for the period February 28, 2017, through April 8, 2022.

## THE SETTLEMENT BENEFITS

**7. What does the Settlement provide?**

*Monetary Relief*:   A Settlement Fund has been created totaling $237,600. Class Member payments, and the cost to administer the Settlement, the cost to inform people about the Settlement, attorneys' fees (inclusive of litigation costs), and an award to the Class Representative will also come out of this fund (*see* Question 12).

*Prospective Relief*:   TCG has represented that it has provided, and will continue to provide, all notices and consents as required by BIPA.

A detailed description of the settlement benefits can be found in the Settlement Agreement, a copy of which is accessible on the Settlement Website by visiting [insert hyperlink and spell out name url of the website].

**8. How much will my payment be?**

The amount of this payment will depend on how many requests for exclusion are submitted.  Each Class Member will receive a proportionate share of the Settlement Fund, which Class Counsel anticipates will be approximately $452.  You can contact Class Counsel at (646) 837-7150 to inquire as to the number of requests for exclusion that have been received to date.

**9. When will I get my payment?**

The hearing to consider the fairness of the settlement is scheduled for [Final Approval Hearing Date]. If the Court approves the settlement, eligible Class Members will receive their payment 28 days after the Settlement has been finally approved and/or after any appeals process is complete.  The payment will be made in the form of a check, and all checks will expire and become void 90 days after they are issued.

## HOW TO GET BENEFITS

### 10. How do I get a payment?

If you are a Class Member who received a Notice via postcard and you want to get a payment, do nothing and you will automatically receive a *pro rata* share of the Settlement Fund, which Class Counsel anticipates will be approximately $452 sent to the postal address identified in the Notice you received. If you have changed addresses or are planning to change addresses prior to [insert date 28 days after final approval hearing date], please visit [insert hyperlink] to complete and submit a change of address form on the Settlement Website.

If you are a Settlement Class Member who did not receive a Notice via postcard and you want to get a payment, you **must** complete and submit a change of address form. You may submit a change of address form either electronically on the Settlement Website by clicking here [insert hyperlink and spell out name url of the website], or by printing and mailing in a paper change of address form, copies of which are available for download at [insert hyperlink and spell out name url of the website]. Change of address forms must be submitted online by 11:59 p.m. EST on [date] or postmarked and mailed by [date].

## REMAINING IN THE SETTLEMENT

### 11. What am I giving up if I stay in the Class?

If the Settlement becomes final, you will give up your right to sue the Defendant and other Released Parties for the claims being resolved by this Settlement. The specific claims you are giving up against the Defendant are described in the Settlement Agreement. You will be "releasing" the Defendant and certain of its affiliates, employees and representatives as described in Section 1.28 of the Settlement Agreement. Unless you exclude yourself (*see* Question 13), you are "releasing" the claims. The Settlement Agreement is available through the "court documents" link on the website.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions you can talk to the lawyers listed in Question 12 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

## THE LAWYERS REPRESENTING YOU

### 12. Do I have a lawyer in the case?

The Court has appointed Philip L. Fraietta, Joseph I. Marchese, and Julia K. Venditti of Bursor & Fisher, P.A. to represent the class. They are called "Class Counsel." They

believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class. You do not need to pay these lawyers. Their fees will be taken from the Settlement Funds. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

## 13. How will the lawyers be paid?

The Defendant and Class Representative have agreed that Class Counsel attorneys' fees and costs may be paid out of the Settlement Fund in an amount to be determined by the Court. The fee petition will seek no more than 35% of the Settlement Fund, which includes reimbursement for their out-of-pocket costs and expenses; the Court may award less than this amount. Under the Settlement Agreement, any amount awarded to Class Counsel will be paid out of the Settlement Fund.

Subject to approval by the Court, Defendant has agreed that the Class Representative may be paid a service award of $5,000 from the Settlement Fund for her services in helping to bring and resolve this case.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

## 14. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must submit a request for exclusion by 11:59 p.m. EST on [objection/exclusion deadline]. Requests for exclusion may be submitted either on the Settlement Website (via the online form accessible at [insert hyperlink and spell out name url of the website]) or by mailing or otherwise deliver a letter (or request for exclusion) stating that you want to be excluded from the *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, Case No. 1:22-cv-01966 settlement. Your letter or request for exclusion must also include your name, your address, an explanation of the basis upon which you claim to be a Class Member, your signature, the name and/or number of this case (noted above in italics in this paragraph), and a statement that you wish to be excluded. If you choose to submit a request for exclusion by mail, you must mail or deliver your exclusion request, postmarked no later than [objection/exclusion deadline], to the following address:

Cruz BIPA Settlement
0000 Street
City, ST 00000

## 15. If I don't exclude myself, can I sue the Defendant for the same thing later?

No. Unless you exclude yourself, you give up any right to sue the Defendant for the claims being resolved by this Settlement.

## 16. If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, you will not receive a *pro rata* share of the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

### 17. How do I object to the Settlement?

If you are a Class Member, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must file with the Court a letter or brief stating that you object to the Settlement in *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, Case No. 1:22-cv-01966, and identify all your reasons for your objections (including citations and supporting evidence) and attach any materials you rely on for your objections. Your letter or brief must also include your name, your address, the basis upon which you claim to be a Class Member, the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with your objection, and your signature. If you, or an attorney assisting you with your objection, have ever objected to any class action settlement where you or the objecting attorney has asked for or received payment in exchange for dismissal of the objection (or any related appeal) without modification to the settlement, you must include a statement in your objection identifying each such case by full case caption. You must also mail or deliver a copy of your letter or brief to Class Counsel and Defendant's Counsel listed below.

Class Counsel will file with the Court and post on this website its request for attorneys' fees by [two weeks prior to objection deadline].

If you want to appear and speak at the Final Approval Hearing to object to the Settlement, with or without a lawyer (explained below in answer to Question Number 21), you must say so in your letter or brief. File the objection with the Court (or mail the objection to the Court) and mail a copy of the objection to Class Counsel and Defendant's Counsel, at the addresses below, postmarked no later than **[objection deadline].**

| Court | Class Counsel | Defendant's Counsel |
|---|---|---|
| The Honorable Sharon Johnson Coleman<br>Everett McKinley Dirksen United States Courthouse<br>219 South Dearborn Street, Courtroom 1241<br>Chicago, IL 60604 | Philip L. Fraietta<br>Bursor & Fisher P.A.<br>888 Seventh Avenue<br>New York, NY 10019 | Tiffany S. Fordyce<br>Greenberg Traurig, LLP,<br>77 West Wacker Drive,<br>Suite 3100, Chicago, IL 60601 |

### 18. What's the difference between objecting and excluding myself from the Settlement?

*ACTIVE 66367572v2*

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

### 19. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at [time] on [date]. Participants can participate by dialing in to [INSERT PHONE NUMBER AND ACCESS CODE]. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Class; to consider the Class Counsel's request for attorneys' fees and expenses; and to consider the request for an incentive award to the Class Representative. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check for updates by visiting the Settlement Website at www.TCGBIPAsettlement.com or calling (800) 000-0000. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the date of the Final Approval Hearing.

### 20. Do I have to participate in the hearing?

No. Class Counsel will answer any questions the Court may have. But, you are welcome to participate at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

### 21. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must include in your letter or brief objecting to the settlement a statement saying that it is your "Notice of Intent to Appear in *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, Case No. 1:22-cv-01966." It must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you. Your objection and notice of intent to appear must be filed with the Court and postmarked no later than [**objection deadline**], and be sent to the addresses listed in Question 16.

# GETTING MORE INFORMATION

| 22TCG. Where do I get more information? |
|---|

This Notice summarizes the Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.CruzBIPAsettlement.com. You may also write with questions to Cruz BIPA Settlement, P.O. Box 0000, City, ST 00000. You can call the Settlement Administrator at (800) 000-0000 or Class Counsel at (646) 837-7150, if you have any questions. Before doing so, however, please read this full Notice carefully. You may also find additional information elsewhere on the case website.

ACTIVE 66367572v2

# EXHIBIT 2

# BURSOR & FISHER
## P.A.

www.bursor.com

701 BRICKELL AVENUE     888 SEVENTH AVENUE     1990 NORTH CALIFORNIA BLVD.
MIAMI, FL 33131         NEW YORK, NY 10019       WALNUT CREEK, CA 94596

## __FIRM RESUME__

With offices in Florida, New York, and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country.

The lawyers at our firm have an active civil trial practice, having won multi-million-dollar verdicts or recoveries in six of six class action jury trials since 2008. Our most recent class action trial victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector found to have violated the Telephone Consumer Protection Act.

In August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel, we won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Honda, Verizon Wireless, AT&T Wireless, Sprint, Haier America, and Michaels Stores as well as purchasers of Avacor™, Hydroxycut, and Sensa™ products. Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

1. *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

2. *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

3. *In re Haier Freezer Consumer Litig.* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

4. *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

5. *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012) to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

6. *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012) to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

7. *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012) to represent a certified nationwide class of purchasers of Sensa weight loss products,

8. *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers,

9. *Ebin v. Kangadis Food Inc.* (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

10. *Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies,

11. *Ebin v. Kangadis Family Management LLC, et al.* (S.D.N.Y. Sept. 18, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

12. *In re Scotts EZ Seed Litig.* (S.D.N.Y. Jan. 26, 2015) to represent a certified class of purchasers of Scotts Turf Builder EZ Seed,

13. *Dei Rossi v. Whirlpool Corp., et al.* (E.D. Cal. Apr. 28, 2015) to represent a certified class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

14. *Hendricks v. StarKist Co.* (N.D. Cal. July 23, 2015) to represent a certified nationwide class of purchasers of StarKist tuna products,

15. *In re NVIDIA GTX 970 Graphics Card Litig.* (N.D. Cal. May 8, 2015) to represent a proposed nationwide class of purchasers of NVIDIA GTX 970 graphics cards,

16. *Melgar v. Zicam LLC, et al.* (E.D. Cal. March 30, 2016) to represent a certified ten-jurisdiction class of purchasers of Zicam Pre-Cold products,

17. *In re Trader Joe's Tuna Litigation* (C.D. Cal. December 21, 2016) to represent a purchaser of allegedly underfilled Trader Joe's canned tuna.

18. *In re Welspun Litigation* (S.D.N.Y. January 26, 2017) to represent a proposed nationwide class of purchasers of Welspun Egyptian cotton bedding products,

19. *Retta v. Millennium Products, Inc.* (C.D. Cal. January 31, 2017) to represent a certified nationwide class of Millennium kombucha beverages,

20. *Moeller v. American Media, Inc.*, (E.D. Mich. June 8, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

21. *Hart v. BHH, LLC* (S.D.N.Y. July 7, 2017) to represent a nationwide class of purchasers of Bell & Howell ultrasonic pest repellers,

22. *McMillion v. Rash Curtis & Associates* (N.D. Cal. September 6, 2017) to represent a certified nationwide class of individuals who received calls from Rash Curtis & Associates,

23. *Lucero v. Solarcity Corp.* (N.D. Cal. September 15, 2017) to represent a certified nationwide class of individuals who received telemarketing calls from Solarcity Corp.,

24. *Taylor v. Trusted Media Brands, Inc.* (S.D.N.Y. Oct. 17, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

25. *Gasser v. Kiss My Face, LLC* (N.D. Cal. Oct. 23, 2017) to represent a proposed nationwide class of purchasers of cosmetic products,

26. *Gastelum v. Frontier California Inc.* (S.F. Superior Court February 21, 2018) to represent a certified California class of Frontier landline telephone customers who were charged late fees,

27. *Williams v. Facebook, Inc.* (N.D. Cal. June 26, 2018) to represent a proposed nationwide class of Facebook users for alleged privacy violations,

28. *Ruppel v. Consumers Union of United States, Inc.* (S.D.N.Y. July 27, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

29. *Bayol v. Health-Ade* (N.D. Cal. August 23, 2018) to represent a proposed nationwide class of Health-Ade kombucha beverage purchasers,

30. *West v. California Service Bureau* (N.D. Cal. September 12, 2018) to represent a certified nationwide class of individuals who received calls from California Service Bureau,

31. *Gregorio v. Premier Nutrition Corporation* (S.D.N.Y. Sept. 14, 2018) to represent a nationwide class of purchasers of protein shake products,

32. *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast* (S.D.N.Y. Oct. 24, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

33. *Bakov v. Consolidated World Travel Inc. d/b/a Holiday Cruise Line* (N.D. Ill. Mar. 21, 2019) to represent a certified class of individuals who received calls from Holiday Cruise Line,

34. *Martinelli v. Johnson & Johnson* (E.D. Cal. March 29, 2019) to represent a certified class of purchasers of Benecol spreads labeled with the representation "No Trans Fat,"

35. *Edwards v. Hearst Communications, Inc.* (S.D.N.Y. April 24, 2019) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

36. *Galvan v. Smashburger* (C.D. Cal. June 25, 2019) to represent a proposed class of purchasers of Smashburger's "Triple Double" burger,

37. *Kokoszki v. Playboy Enterprises, Inc.* (E.D. Mich. Feb. 7, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

38. *Russett v. The Northwestern Mutual Life Insurance Co.* (S.D.N.Y. May 28, 2020) to represent a class of insurance policyholders that were allegedly charged unlawful paper billing fees,

39. *In re: Metformin Marketing and Sales Practices Litigation* (D.N.J. June 3, 2020) to represent a proposed nationwide class of purchasers of generic diabetes medications that were contaminated with a cancer-causing carcinogen,

40. *Hill v. Spirit Airlines, Inc.* (S.D. Fla. July 21, 2020) to represent a proposed nationwide class of passengers whose flights were cancelled by Spirit Airlines

due to the novel coronavirus, COVID-19, and whose tickets were not refunded,

41. *Kramer v. Alterra Mountain Co.* (D. Colo. July 31, 2020) to represent a proposed nationwide class of purchasers to recoup the unused value of their Ikon ski passes after Alterra suspended operations at its ski resorts due to the novel coronavirus, COVID-19,

42. *Qureshi v. American University* (D.D.C. July 31, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by American University due to the novel coronavirus, COVID-19,

43. *Hufford v. Maxim Inc.* (S.D.N.Y. Aug. 13, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

44. *Desai v. Carnegie Mellon University* (W.D. Pa. Aug. 26, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Carnegie Mellon University due to the novel coronavirus, COVID-19,

45. *Heigl v. Waste Management of New York, LLC* (E.D.N.Y. Aug. 27, 2020) to represent a class of waste collection customers that were allegedly charged unlawful paper billing fees,

46. *Stellato v. Hofstra University* (E.D.N.Y. Sept. 18, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Hofstra University due to the novel coronavirus, COVID-19,

47. *Kaupelis v. Harbor Freight Tools USA, Inc.* (C.D. Cal. Sept. 23, 2020), to represent consumers who purchased defective chainsaws,

48. *Soo v. Lorex Corporation* (N.D. Cal. Sept. 23, 2020), to represent consumers whose security cameras were intentionally rendered non-functional by manufacturer,

49. *Miranda v. Golden Entertainment (NV), Inc.* (D. Nev. Dec. 17, 2020), to represent consumers and employees whose personal information was exposed in a data breach,

50. *Benbow v. SmileDirectClub, Inc.* (Cir. Ct. Cook Cnty. Feb. 4, 2021), to represent a certified nationwide class of individuals who received text messages from SmileDirectClub, in alleged violation of the Telephone Consumer Protection Act,

51. *Suren v. DSV Solutions, LLC* (Cir. Ct. DuPage Cnty. Apr. 8, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

52. *De Lacour v. Colgate-Palmolive Co.* (S.D.N.Y. Apr. 23, 2021), to represent a certified class of consumers who purchased allegedly "natural" Tom's of Maine products,

53. *Wright v. Southern New Hampshire University* (D.N.H. Apr. 26, 2021), to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Southern New Hampshire University due to the novel coronavirus, COVID-19,

54. *Sahlin v. Hospital Housekeeping Systems, LLC* (Cir. Ct. Williamson Cnty. May 21, 2021), to represent a certified class of employees who used a

fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

55. *Landreth v. Verano Holdings LLC, et al.* (Cir. Ct. Cook Cnty. June 2, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act.

56. *Rocchio v. Rutgers, The State University of New Jersey*, (Sup. Ct., Middlesex Cnty. October 27, 201), to represent a certified nationwide class of students for fee refunds after their classes were moved online by Rutgers due to the novel coronavirus, COVID-19,

57. *Malone v. Western Digital Corp.*, (N.D. Cal. Dec. 22, 2021), to represent a class of consumers who purchased hard drives that were allegedly deceptively advertised,

58. *Jenkins v. Charles Industries, LLC*, (Cir. Ct. DuPage Cnty. Dec. 21, 2021) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

59. *Frederick v. Examsoft Worldwide, Inc.*, (Cir. Ct. DuPage Cnty. Jan. 6, 2022) to represent a certified class of exam takers who used virtual exam proctoring software, in alleged violation of the Illinois Biometric Information Privacy Act,

60. *Isaacson v. Liqui-Box Flexibles, LLC, et al.*, (Cir. Ct. Will Cnty. Jan. 18, 2022) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

61. *Goldstein v. Henkel Corp.*, (D. Conn. Mar. 3, 2022) to represent a proposed class of purchasers of Right Guard antiperspirants that were allegedly contaminated with benzene,

62. *McCall v. Hercules Corp.*, (N.Y. Sup. Ct., Westchester Cnty. Mar. 14, 2022) to represent a certified class of who laundry card purchasers who were allegedly subjected to deceptive practices by being denied cash refunds,

63. *Lewis v. Trident Manufacturing, Inc.*, (Cir. Ct. Kane Cnty. Mar. 16, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

64. *Croft v. Spinx Games Limited, et al.*, (W.D. Wash. Mar. 31, 2022) to represent a certified class of Washington residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Washington law,

65. *Fischer v. Instant Checkmate LLC*, (N.D. Ill. Mar. 31, 2022) to represent a certified class of Illinois residents whose identities were allegedly used without their consent in alleged violation of the Illinois Right of Publicity Act,

66. *Rivera v. Google LLC*, (Cir. Ct. Cook Cnty. Apr. 25, 2022) to represent a certified class of Illinois residents who appeared in a photograph in Google Photos, in alleged violation of the Illinois Biometric Information Privacy Act,

67. *Loftus v. Outside Integrated Media, LLC*, (E.D. Mich. May 5, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

68. *D'Amario v. The University of Tampa*, (S.D.N.Y. June 3, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their

classes were moved online by The University of Tampa due to the novel coronavirus, COVID-19.

69. *Fittipaldi v. Monmouth University*, (D.N.J. Sept. 22, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Monmouth University due to the novel coronavirus, COVID-19.

## SCOTT A. BURSOR

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or recoveries in six of six civil jury trials since 2008. Mr. Bursor's most recent victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector for violations of the Telephone Consumer Protection Act (TCPA).

In *Ayyad v. Sprint Spectrum L.P.* (2013), where Mr. Bursor served as lead trial counsel, the jury returned a verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict in favor of the plaintiff and class represented by Mr. Bursor. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict. Other than Mr. Bursor and his partner Mr. Fisher, we know of no lawyer that has tried more than one class action to a jury. Mr. Bursor's perfect record of six wins in six class action jury trials, with recoveries ranging from $21 million to $299 million, is unmatched by any other lawyer. Each of these victories was hard-fought against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996. He served as Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and Order of the Coif. Prior to starting his own practice, Mr. Bursor was a litigation associate at a large New York based law firm where he represented telecommunications, pharmaceutical, and technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as the bars of the United States Court of Appeals for the Second, Third, Fourth, Sixth, Ninth and Eleventh Circuits, and the bars of the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Central, Southern and Eastern Districts of California, the Southern and Middle Districts of Florida, and the Eastern District of Michigan.

### *Representative Cases*

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd largest classes ever certified. Mr. Bursor has represented classes including more than 160 million class members, roughly 1 of every 2 Americans. Listed below are recent cases that are representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified). These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications. These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation. Mr. Bursor served as lead trial counsel for this class again in 2013 during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class. Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert. This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members. In December 2016, after more than 13 years of litigation, the case was settled for $304 million, including $79 million in cash payments plus $225 million in debt cancellation.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.* Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system. In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case. Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006. This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*. After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement. The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, included a $20 million cash payment to provide refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and an injunction that reduced other late fee charges by $18.6 million.

## L. TIMOTHY FISHER

L. Timothy Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals.

Mr. Fisher has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud. With his partner Scott A. Bursor, Mr. Fisher has tried five class action jury trials, all of which produced successful results. In *Thomas v. Global Vision Products*, Mr. Fisher obtained a jury award of $50,024,611 — the largest class action award in California in 2009 and the second-largest jury award of any kind. In 2019, Mr. Fisher served as trial counsel with Mr. Bursor and his partner Yeremey Krivoshey in *Perez. v. Rash Curtis & Associates*, where the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.

Mr. Fisher was admitted to the State Bar of California in 1997. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit, the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Northern District of Illinois, the Eastern District of Michigan, and the Eastern District of Missouri. Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004. In 2010, he contributed jury instructions, a verdict form and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010). In January 2014, Chief Judge Claudia Wilken of the United States District Court for the Northern District of California appointed Mr. Fisher to a four-year term as a member of the Court's Standing Committee on Professional Conduct.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first-year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science. Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council." He is also a member of Phi Beta Kappa.

### Representative Cases

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court). Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor. The case lasted more than seven years and involved two trials. The first trial resulted in a verdict for plaintiff and the class in the amount of $40,000,000. The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

*In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court). Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems. Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions. The settlements fundamentally changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

*In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission). In separate cases that are a part of the same coordinated litigation as the Handset Locking Actions, Mr. Fisher actively worked on claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million. In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

### Selected Published Decisions

*Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 30, 2016) (certifying 10-jurisdiction class of purchasers of cold remedies, denying motion for summary judgment, and denying motions to exclude plaintiff's expert witnesses).

*Salazar v. Honest Tea, Inc*., 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015) (denying motion for summary judgment).

*Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484 (E.D. Cal. Apr. 27, 2015) (certifying California class of purchasers of refrigerators that were mislabeled as Energy Star qualified).

*Bayol v. Zipcar, Inc.*, 78 F.Supp.3d 1252 (N.D. Cal. 2015) (denying motion to dismiss claims alleging unlawful late fees under California Civil Code § 1671).

*Forcellati v. Hyland's, Inc.*, 2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) (denying motion for summary judgment in case alleging false advertising of homeopathic cold and flu remedies for children).

*Bayol v. Zipcar, Inc*., 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) (denying motion to transfer venue pursuant to a forum selection clause).

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (certifying nationwide class of purchasers of homeopathic cold and flu remedies for children).

*Hendricks v. StarKist Co.*, 30 F.Supp.3d 917 (N.D. Cal. 2014) (denying motion to dismiss in case alleging underfilling of 5-ounce cans of tuna).

*Dei Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. October 25, 2013) (denying motion to dismiss in case alleging that certain KitchenAid refrigerators were misrepresented as Energy Star qualified).

*Forcellati v. Hyland's Inc.*, 876 F.Supp.2d 1155 (C.D. Cal. 2012) (denying motion to dismiss complaint alleging false advertising regarding homeopathic cold and flu remedies for children).

*Clerkin v. MyLife.com*, 2011 WL 3809912 (N.D. Cal. August 29, 2011) (denying defendants' motion to dismiss in case alleging false and misleading advertising by a social networking company).

*In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010) (affirming order approving $21 million class action settlement).

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007) (affirming order denying motion to compel arbitration).

### ***Selected Class Settlements***

*Melgar v. Zicam* (Eastern District of California) - $16 million class settlement of claims alleging cold medicine was ineffective.

*Gastelum v. Frontier California Inc.* (San Francisco Superior Court) - $10.9 million class action settlement of claims alleging that a residential landline service provider charged unlawful late fees.

*West v. California Service Bureau*, *Inc.* (Northern District of California) - $4.1 million class settlement of claims under the Telephone Consumer Protection Act.

*Gregorio v. Premier Nutrition Corp.* (Southern District of New York) - $9 million class settlement of false advertising claims against protein shake manufacturer.

*Morris v. SolarCity Corp.* (Northern District of California) - $15 million class settlement of claims under the Telephone Consumer Protection Act.

*Retta v. Millennium Products, Inc.* (Central District of California) - $8.25 million settlement to resolve claims of bottled tea purchasers for alleged false advertising.

*Forcellati v. Hyland's* (Central District of California) – nationwide class action settlement providing full refunds to purchasers of homeopathic cold and flu remedies for children.

*Dei Rossi v. Whirlpool* (Eastern District of California) – class action settlement providing $55 cash payments to purchasers of certain KitchenAid refrigerators that allegedly mislabeled as Energy Star qualified.

*In Re NVIDIA GTX 970 Graphics Chip Litigation* (Northern District of California) - $4.5 million class action settlement of claims alleging that a computer graphics card was sold with false and

misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.* (Northern District of California) – $12 million class action settlement of claims alleging that 5-ounce cans of tuna were underfilled.

*In re Zakskorn v. American Honda Motor Co.* Honda (Eastern District of California) – nationwide settlement providing for brake pad replacement and reimbursement of out-of-pocket expenses in case alleging defective brake pads on Honda Civic vehicles manufactured between 2006 and 2011.

*Correa v. Sensa Products, LLC* (Los Angeles Superior Court) - $9 million settlement on behalf of purchasers of the Sensa weight loss product.

*In re Pacific Bell Late Fee Litigation* (Contra Costa County Superior Court) - $38.6 million settlement on behalf of Pac Bell customers who paid an allegedly unlawful late payment charge.

*In re Haier Freezer Consumer Litigation* (Northern District of California) - $4 million settlement, which provided for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - $30 million settlement on behalf of a class of purchasers of a hair loss remedy.

*Guyette v. Viacom, Inc.* (Alameda County Superior Court) - $13 million settlement for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers.

## JOSEPH I. MARCHESE

Joseph I. Marchese is a Partner with Bursor & Fisher, P.A. Joe focuses his practice on consumer class actions, employment law disputes, and commercial litigation. He has represented corporate and individual clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Joe has diverse experience in litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, privacy violations, data breach claims, and violations of the Servicemembers Civil Relief Act.

Joe also has significant experience in multidistrict litigation proceedings. Recently, he served on the Plaintiffs' Executive Committee in *In Re: Blue Buffalo Company, Ltd. Marketing And Sales Practices Litigation*, MDL No. 2562, which resulted in a $32 million consumer class settlement. Currently, he serves on the Plaintiffs' Steering Committee for Economic Reimbursement in *In Re: Valsartan Products Liability Litigation*, MDL. No. 2875.

Joe is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan, as well as the United States Court of Appeals for the Second Circuit.

Joe graduated from Boston University School of Law in 2002 where he was a member of The Public Interest Law Journal. In 1998, Joe graduated with honors from Bucknell University.

### ***Selected Published Decisions:***

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. Sept. 7, 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

*Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. June 17, 2016), denying publisher's motion to dismiss its subscriber's allegations of state privacy law violations in putative class action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518 (N.D. Ill. 2011), denying retailer's motion to dismiss its customers' state law consumer protection and privacy claims in data breach putative class action.

### ***Selected Class Settlements:***

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

In *re Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB (S.D.N.Y. 2018) – final approval granted for $47 million class settlement to resolve false advertising claims of purchasers of combination grass seed product.

*In Re: Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) – final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*Rodriguez v. Citimortgage, Inc.*, Case No. 11-cv-4718-PGG (S.D.N.Y. 2015) – final approval granted for $38 million class settlement to resolve claims of military servicemembers for alleged foreclosure violations of the Servicemembers Civil Relief Act, where each class member was entitled to $116,785 plus lost equity in the foreclosed property and interest thereon.

*O'Brien v. LG Electronics USA, Inc., et al.*, Case No. 10-cv-3733-DMC (D.N.J. 2011) – final approval granted for $23 million class settlement to resolve claims of Energy Star refrigerator purchasers for alleged false advertising of the appliances' Energy Star qualification.

### JOSHUA D. ARISOHN

Joshua D. Arisohn is a Partner with Bursor & Fisher, P.A. Josh has litigated precedent-setting cases in the areas of consumer class actions and terrorism. He participated in the first ever trial to take place under the Anti-Terrorism Act, a statute that affords U.S. citizens the right to assert federal claims for injuries arising out of acts of international terrorism. Josh's practice continues to focus on terrorism-related matters as well as class actions.

Josh is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the District Court for the District of Columbia, and the United States Courts of Appeals for the Second and Ninth Circuits.

Josh previously practiced at Dewey & LeBoeuf LLP and DLA Piper LLP. He graduated from Columbia University School of Law in 2006, where he was a Harlan Fiske Stone Scholar, and received his B.A. from Cornell University in 2002. Josh has been honored as a 2015, 2016 and 2017 Super Lawyer Rising Star.

### *Selected Published Decisions:*

*Fields v. Syrian Arab Republic*, Civil Case No. 18-1437 (RJL), entering a judgment of approximately $850 million in favor of the family members of victims of terrorist attacks carried out by ISIS with the material support of Syria.

*Farwell v. Google LLC*, 2022 WL 1568361 (C.D. Ill. Mar. 31, 2022), denying social media defendant's motion to dismiss BIPA claims brought on behalf of Illinois school students using Google's Workspace for Education platform on laptop computers.

*Weiman v. Miami University*, Case No. 2020-00614JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Smith v. The Ohio State University*, Case No. 2020-00321JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Waitt v. Kent State University*, Case No. 2020-00392JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Duke v. Ohio University*, Case No. 2021-00036JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

BURSOR&FISHER
P.A.

*Keba v. Bowling Green State University*, Case No. 2020-00639JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Kirkbride v. The Kroger Co.*, Case No. 2:21-cv-00022-ALM-EPD, denying motion to dismiss claims based on the allegation that defendant overstated its usual and customary prices and thereby overcharged customers for generic drugs.

### *Selected Class Settlements:*

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

*Marquez v. Google LLC*, Case No. 2021-CH-1460 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $100 million class settlement to resolve alleged BIPA violations of Illinois residents appearing in photos on the Google Photos platform.

### JOEL D. SMITH

Joel D. Smith is a Partner with Bursor & Fisher, P.A. Joel is a trial attorney who has practiced in lower court and appeals courts across the country, as well as the U.S. Supreme Court.

Prior to joining Bursor & Fisher, Joel was a litigator at Crowell & Moring, where he represented Fortune 500 companies, privately held businesses, and public entities in a wide variety of commercial, environmental, and class action matters. Among other matters, Joel served as defense counsel for AT&T, Enterprise-Rent-A-Car, Flowers Foods, and other major U.S. businesses in consumer class actions, including a class action seeking to hold U.S. energy companies accountable for global warming. Joel represented four major U.S. retailers in a case arising from a devastating arson fire and ensuing state of emergency in Roseville, California, which settled on the eve of a trial that was expected to last several months and involve several dozen witnesses. Joel also was part of the trial team in a widely publicized trial over the death of a contestant who died after participating in a Sacramento radio station's water drinking contest.

More recently, Joel's practice focuses on consumer class actions involving automotive and other product defects, financial misconduct, false advertising, and privacy violations.

Joel received both his undergraduate and law degrees from the University of California at Berkeley. While at Berkeley School of Law, he was a member of the California Law Review, received several academic honors, externed for the California Attorney General's office and published an article on climate change policy and litigation.

Joel is admitted to the State Bar of California, as well as the United States Courts of Appeals for the Second, Third and Ninth Circuits; all California district courts; the Eastern District of Michigan; and the Northern District of Illinois.

BURSOR&FISHER
P.A.

### *Selected Published Decisions:*

*Javier v. Assurance IQ, LLC*, --- Fed App'x --- 2022 WL 1744107 (9th Cir. May 31, 2022), reversing dismissal in a class action alleging surreptitious monitoring of internet communications.

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), affirming denial of motion to compel arbitration in putative class action alleging unlawful calls under the Telephone Consumer Protection Act.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020), granting class certification of consumer protection claims brought by purchasers of defective chainsaws.

### *Selected Class Settlements:*

*Crandell et al. v. Volkswagen Group of America*, Case No. 2:18-cv-13377-JSA (D.N.J.) – final approval granted for a settlement providing relief for Volkswagen Touareg owners to resolve allegations that defects in Touareg vehicles caused the engines to ingest water when driving in the rain.

*Isley et al. v. BMW of N. America, LLC*, Case No. 2:19-cv-12680-ESK (D.N.J.) – final approval granted for settlement providing BMW owners with reimbursements and credit vouchers to resolve allegations that defects in the BMW N63TU engine caused excessive oil consumption.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 8:19-cv-01203-JVS-DFM (C.D. Cal.) – final approval granted for a settlement valued up to $40 million to resolve allegations that Harbor Freight sold chainsaws with a defective power switch that could prevent the chainsaws from turning off.

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

## **NEAL J. DECKANT**

Neal J. Deckant is a Partner with Bursor & Fisher, P.A., where he serves as the firm's Head of Information & e-Discovery. Neal focuses his practice on complex business litigation and consumer class actions. Prior to joining Bursor & Fisher, Neal counseled low-income homeowners facing foreclosure in East Boston.

Neal is admitted to the State Bars of California and New York, and is a member of the bars of the United States District Court for the Northern District of California, the United States District Court for the Eastern District of California, the United States District Court for the Central District of California, the United States District Court for the Southern District of California, the United States District Court for the Southern District of New York, the United

States District Court for the Eastern District of New York, and the bars of the United States Courts of Appeals for the Second and Ninth Circuits.

Neal received his Juris Doctor from Boston University School of Law in 2011, graduating cum laude with two Dean's Awards. During law school, Neal served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms, both of which were cited by the New York Court of Appeals, the highest court in the state. Neal was also awarded Best Oral Argument in his moot court section, and he served as a Research Assistant for his Securities Regulation professor. Neal has also been honored as a 2014, 2015, 2016, and 2017 Super Lawyers Rising Star. In 2007, Neal graduated with Honors from Brown University with a dual major in East Asian Studies and Philosophy.

### *Selected Published Decisions:*

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (N.D. Cal. Mar. 29, 2019), granting class certification of false advertising and other claims brought by purchasers of Benecol spreads labeled with the representation "No Trans Fats."

*Dzielak v. Whirlpool Corp.*, 2017 WL 6513347 (D.N.J. Dec. 20, 2017), granting class certification of consumer protection claims brought by purchasers of Maytag Centennial washing machines marked with the "Energy Star" logo.

*Duran v. Obesity Research Institute*, LLC, 204 Cal. Rptr. 3d 896 (Cal. Ct. App. 2016), reversing and remanding final approval of a class action settlement on appeal, regarding allegedly mislabeled dietary supplements, in connection with a meritorious objection.

*Marchuk v. Faruqi & Faruqi, LLP*, et al., 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*In Re NVIDIA GTX 970 Graphics Chip Litigation*, Case No. 15-cv-00760-PJH (N.D. Cal. Dec. 7, 2016) – final approval granted for $4.5 million class action settlement to resolve claims that a computer graphics card was allegedly sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) – final approval granted for $12 million class action settlement to resolve claims that 5-ounce cans of tuna were allegedly underfilled.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – class action claims resolved for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy, following claims that its olive oil was allegedly sold with false and misleading representations.

### ***Selected Publications:***

Neal Deckant, *X. Reforms of Collateralized Debt Obligations: Enforcement, Accounting and Regulatory Proposals*, 29 Rev. Banking & Fin. L. 79 (2009) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014)).

Neal Deckant, *Criticisms of Collateralized Debt Obligations in the Wake of the Goldman Sachs Scandal*, 30 Rev. Banking & Fin. L. 407 (2010) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014); *Lyon Village Venetia, LLC v. CSE Mortgage LLC*, 2016 WL 476694, at *1 n.1 (Md. Ct. Spec. App. Feb. 4, 2016); Ivan Ascher, Portfolio Society: On the Capitalist Mode of Prediction, at 141, 153, 175 (Zone Books / The MIT Press 2016); Devon J. Steinmeyer, *Does State National Bank of Big Spring v. Geithner Stand a Fighting Chance?*, 89 Chi.-Kent. L. Rev. 471, 473 n.13 (2014)).

## **YITZCHAK KOPEL**

Yitzchak Kopel is a Partner with Bursor & Fisher, P.A. Yitz focuses his practice on consumer class actions and complex business litigation. He has represented corporate and individual clients before federal and state courts, as well as in arbitration proceedings.

Yitz has substantial experience in successfully litigating and resolving consumer class actions involving claims of consumer fraud, data breaches, and violations of the telephone consumer protection act. Since 2014, Yitz has obtained class certification on behalf of his clients five times, three of which were certified as nationwide class actions. Bursor & Fisher was appointed as class counsel to represent the certified classes in each of the cases.

Yitz is admitted to the State Bars of New York and New Jersey, the bar of the United States Court of Appeals for the Second, Eleventh, and Ninth Circuits, and the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, Eastern District of Missouri, Eastern District of Wisconsin, Northern Distriict of Illinois, and District of New Jersey.

Yitz received his Juris Doctorate from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Yitz served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Yitz graduated *cum laude* from Queens College with a B.A. in Accounting.

BURSOR&FISHER
P.A.

### *Selected Published Decisions:*

*Bassaw v. United Industries Corp.,* --- F. Supp. 3d ---, 2020 WL 5117916 (S.D.N.Y. Aug. 31, 2020), denying motion to dismiss claims in putative class action concerning insect foggers.

*Poppiti v. United Industries Corp.*, 2020 WL 1433642 (E.D. Mo. Mar. 24, 2020), denying motion to dismiss claims in putative class action concerning citronella candles.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 6699188 (N.D. Ill. Dec. 9, 2019), granting summary judgment on behalf of certified class in robocall class action.

*Krumm v. Kittrich Corp.*, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019), denying motion to dismiss claims in putative class action concerning mosquito repellent.

*Crespo v. S.C. Johnson & Son, Inc.*, 394 F. Supp. 3d 260 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding Raid insect fogger.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019), certifying a class of persons who received robocalls in the state of Illinois.

*Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding mosquito repellent.

*Hart v. BHH, LLC*, 323 F. Supp. 3d 560 (S.D.N.Y. 2018), denying defendants' motion for summary judgment in certified class action involving the sale of ultrasonic pest repellers.

*Hart v. BHH, LLC*, 2018 WL 3471813 (S.D.N.Y. July 19, 2018), denying defendants' motion to exclude plaintiffs' expert in certified class action involving the sale of ultrasonic pest repellers.

*Penrose v. Buffalo Trace Distillery, Inc.*, 2018 WL 2334983 (E.D. Mo. Feb. 5, 2018), denying bourbon producers' motion to dismiss fraud and consumer protection claims in putative class action.

*West v. California Service Bureau*, *Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017), certifying a nationwide class of "wrong-number" robocall recipients.

*Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), certifying nationwide class of purchasers of ultrasonic pest repellers.

*Browning v. Unilever United States, Inc.*, 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017), denying motion to dismiss fraud and warranty claims in putative class action concerning facial scrub product.

*Brenner v. Procter & Gamble Co.*, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016), denying motion to dismiss warranty and consumer protection claims in putative class action concerning baby wipes.

*Hewlett v. Consolidated World Travel, Inc.*, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016), denying telemarketer's motion to dismiss TCPA claims in putative class action.

*Bailey v. KIND, LLC*, 2016 WL 3456981 (C.D. Cal. June 16, 2016), denying motion to dismiss fraud and warranty claims in putative class action concerning snack bars.

*Hart v. BHH, LLC*, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) denying motion to dismiss warranty and consumer protection claims in putative class action concerning ultrasonic pest repellers.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting clients' motion for judgment as a matter of law on claims for retaliation and defamation in employment action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), denying diet pill manufacturers' motion to dismiss its purchasers' allegations for breach of express warranty in putative class action.

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014), denying online job board's motion to dismiss its subscribers' allegations of consumer protection law violations in putative class action.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### ***Selected Class Settlements:***

*Hart v. BHH, LLC*, Case No. 1:15-cv-04804 (S.D.N.Y. Sept. 22, 2020), resolving class action claims regarding ultrasonic pest repellers.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014), resolving class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

*West v. California Service Bureau*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019), resolving class action claims against debt-collector for wrong-number robocalls for $4.1 million.

### <u>FREDERICK J. KLORCZYK III</u>

Frederick J. Klorczyk III is a Partner with Bursor & Fisher, P.A. Fred focuses his practice on complex business litigation and consumer class actions.

Fred has substantial experience in successfully litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, and privacy violations. In 2019, Fred certified both a California and a 10-state express warranty class on behalf of purchasers of a butter substitute. In 2014, Fred served on the litigation team in *Ebin v. Kangadis Food Inc*. At class certification, Judge Rakoff adopted Fred's choice of law fraud analysis and research directly into his published decision certifying a nationwide fraud class.

Fred is admitted to the State Bars of California, New York, and New Jersey, and is a member of the bars of the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, the Southern, Eastern, and Northern Districts of New York, the District of New Jersey, the Northern District of Illinois, the Eastern District of Missouri, the Eastern District of Wisconsin, and the Eastern District of Michigan, as well as the bars of the United States Court of Appeals for the Second and Ninth Circuits.

Fred received his Juris Doctor from Brooklyn Law School in 2013, graduating m*agna cum laude* with two CALI Awards for the highest grade in his classes on conflict of laws and criminal law. During law school, Fred served as an Associate Managing Editor for the Brooklyn Journal of Corporate, Financial and Commercial Law and as an intern to the Honorable Alison J. Nathan of the United States District Court for the Southern District of New York and the Honorable Janet Bond Arterton of the United States District Court for the District of Connecticut. In 2010, Fred graduated from the University of Connecticut with a B.S. in Finance.

### *<u>Selected Published Decisions:</u>*

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), denying defendants' motions to dismiss consumer's allegations of state privacy law violations in putative class action.

*In re Welspun Litigation*, 2019 WL 2174089 (S.D.N.Y. May 20, 2019), denying retailers' and textile manufacturer's motion to dismiss consumers' allegations of false advertising relating to purported "100% Egyptian Cotton" linen products.

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019), granting class certification of California false advertising claims and multi-state express warranty claims brought by purchasers of a butter substitute.

*Porter v. NBTY, Inc.*, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016), denying supplement manufacturer's motion to dismiss consumers' allegations of false advertising relating to whey protein content.

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d. 282 (S.D.N.Y. 2015), denying supplement manufacturer's motion to dismiss consumers' allegations of false advertising relating to a homeopathic cold product.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, Case No. 13-4775 (2d Cir. Apr. 15, 2015), denying olive oil manufacturer's Rule 23(f) appeal following grant of nationwide class certification.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### ***Selected Class Settlements:***

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*In Re: Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) –final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – resolved class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

### **YEREMEY O. KRIVOSHEY**

Yeremey O. Krivoshey is a Partner with Bursor & Fisher, P.A. Mr. Krivoshey has particular expertise in COVID-19 related consumer litigation, unlawful fees and liquidated

damages in consumer contracts, TCPA cases, product recall cases, and fraud and false advertising litigation. He has represented clients in a wide array of civil litigation, including appeals before the Ninth Circuit.

Mr. Krivoshey served as trial counsel with Mr. Bursor in *Perez. v. Rash Curtis & Associates*, where, in May 2019, the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act. Since 2017, Mr. Krivoshey has secured over $200 million for class members in consumer class settlements. Mr. Krivoshey has been honored multiple times as a Super Lawyers Rising Star.

Mr. Krivoshey is admitted to the State Bar of California. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, as well as the District of Colorado.

Mr. Krivoshey graduated from New York University School of Law in 2013, where he was a Samuel A. Herzog Scholar. Prior to Bursor & Fisher, P.A., Mr. Krivoshey worked as a Law Clerk at Vladeck, Waldman, Elias & Engelhard, P.C, focusing on employment discrimination and wage and hour disputes. In law school, he has also interned at the American Civil Liberties Union and the United States Department of Justice. In 2010, Mr. Krivoshey graduated *cum laude* from Vanderbilt University.

### *Representative Cases:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. May 13, 2019). Mr. Krivoshey litigated claims against a national health-care debt collection agency on behalf of people that received autodialed calls on their cellular telephones without their prior express consent. Mr. Krivoshey successfully obtained nationwide class certification, defeated the defendant's motion for summary judgment, won summary judgment as to the issue of prior express consent and the use of automatic telephone dialing systems, and navigated the case towards trial. With his partner, Scott Bursor, Mr. Krivoshey obtained a jury verdict finding that the defendant violated the Telephone Consumer Protection Act ("TCPA") 534,712 times. Under the TCPA, class members are entitled to $500 per each call made in violation of the TCPA – in this case, $267 million for 534,712 unlawful calls.

### *Selected Published Decisions:*

*Goodrich, et al. v. Alterra Mountain Co., et al.,* 2021 WL 2633326 (D. Col. June 25, 2021), denying ski pass company's motion to dismiss its customers' allegations concerning refunds owed due to cancellation of ski season due to COVID-19.

*Bayol v. Zipcar, Inc*., 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014), denying enforcement of forum selection clause based on public policy grounds.

*Bayol v. Zipcar, Inc*., 78 F. Supp. 3d 1252 (N.D. Cal. Jan. 29, 2015), denying car-rental company's motion to dismiss its subscriber's allegations of unlawful late fees.

BURSOR&FISHER
P.A.

*Brown v. Comcast Corp.*, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016), denying internet service provider's motion to compel arbitration of claims alleged under the Telephone Consumer Protection Act.

*Chaisson, et al. v. University of Southern California* (Cal. Sup. Ct. Mar. 25, 2021), denying university's demurrer as to its students' allegations of unfair and unlawful late fees.

*Choi v. Kimberly-Clark Worldwide, Inc.*, 2019 WL 4894120 (C.D. Cal. Aug. 28, 2019), denying tampon manufacturer's motion to dismiss its customer's design defect claims.

*Horanzy v. Vemma Nutrition Co.*, Case No. 15-cv-298-PHX-JJT (D. Ariz. Apr. 16, 2016), denying multi-level marketer's and its chief scientific officer's motion to dismiss their customer's fraud claims.

*McMillion, et al. v. Rash Curtis & Associates*, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017), granting nationwide class certification of Telephone Consumer Protection Act claims by persons receiving autodialed and prerecorded calls without consent.

*McMillion, et al. v. Rash Curtis & Associates*, 2018 WL 692105 (N.D. Cal. Feb. 2, 2018), granting plaintiffs' motion for partial summary judgment on Telephone Consumer Protection Act violations in certified class action.

*Perez v. Indian Harbor Ins. Co.*, 2020 WL 2322996 (N.D. Cal. May 11, 2020), denying insurance company's motion to dismiss or stay assigned claims of bad faith and fair dealing arising out of $267 million trial judgment.

*Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020), upholding constitutionality of $267 million class trial judgment award.

*Salazar v. Honest Tea, Inc.*, 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015), denying manufacturer's motion for summary judgment as to customer's false advertising claims.

*Sholopa v. Turk Hava Yollari A.O., Inc. (d/b/a Turkish Airlines)*, 2022 WL 976825 (S.D.N.Y. Mar. 31, 2022), denying airline's motion to dismiss its customers claims for failure to refund flights cancelled due to COVID-19.

### *Selected Class Settlements:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. Oct. 1, 2021) granting final approval to a $75.6 million non-reversionary cash common fund settlement, the largest ever consumer class action settlement stemming from a violation of the Telephone Consumer Protection Act.

*Strassburger v. Six Flags Theme Parks Inc., et al.* (Ill. Cir. Ct. 2022) granting final approval to $83.6 million settlement to resolve claims of theme park members for alleged wrongful charging of fees during the COVID-19 pandemic.

*Juarez-Segura, et al. v. Western Dental Services, Inc.* (Cal. Sup. Ct. Aug. 9, 2021) granting final approval to $35 million settlement to resolve claims of dental customers for alleged unlawful late fees.

*Moore v. Kimberly-Clark Worldwide, Inc.* (Ill. Cir. Ct. July 22, 2020) granting final approval to $11.2 million settlement to resolve claims of tampon purchasers for alleged defective products.

*Retta v. Millennium Prods., Inc.*, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) granting final approval to $8.25 million settlement to resolve claims of kombucha purchasers for alleged false advertising.

*Cortes v. National Credit Adjusters, L.L.C.* (E.D. Cal. Dec. 7, 2020) granting final approval to $6.8 million settlement to resolve claims of persons who received alleged autodialed calls without prior consent in violation of the TCPA.

*Bayol et al. v. Health-Ade LLC, et al.* (N.D. Cal. Oct. 11, 2019) – granting final approval to $3,997,500 settlement to resolve claims of kombucha purchasers for alleged false advertising.

## <u>PHILIP L. FRAIETTA</u>

Philip L. Fraietta is a Partner with Bursor & Fisher, P.A. Phil focuses his practice on data privacy, complex business litigation, consumer class actions, and employment law disputes. Phil has been named a "Rising Star" in the New York Metro Area by Super Lawyers® every year since 2019.

Phil has significant experience in litigating consumer class actions, particularly those involving privacy claims under statutes such as the Michigan Preservation of Personal Privacy Act, the Illinois Biometric Information Privacy Act, and Right of Publicity statutes. Since 2016, Phil has recovered over $100 million for class members in privacy class action settlements. In addition to privacy claims, Phil has significant experience in litigating and settling class action claims involving false or misleading advertising.

Phil is admitted to the State Bars of New York, New Jersey, Illinois, and Michigan, the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the Western District of New York, the Northern District of New York, the District of New Jersey, the Eastern District of Michigan, the Western District of Michigan, the Northern District of Illinois, the Central District of Illinois, and the United States Court of Appeals for the Second, Third, and Ninth Circuits. Phil was a Summer Associate with Bursor & Fisher prior to joining the firm.

Phil received his Juris Doctor from Fordham University School of Law in 2014, graduating cum laude. During law school, Phil served as an Articles & Notes Editor for the Fordham Law Review, and published two articles. In 2011, Phil graduated cum laude from Fordham University with a B.A. in Economics.

### <u>*Selected Published Decisions:*</u>

BURSOR&FISHER
P.A.

*Fischer v. Instant Checkmate LLC*, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022), certifying class of Illinois residents for alleged violations of Illinois' Right of Publicity Act by background reporting website.

*Kolebuck-Utz v. Whitepages Inc.,* 2021 WL 157219 (W.D. Wash. Apr. 22, 2021), denying defendant's motion to dismiss for alleged violations of Ohio's Right to Publicity Law.

*Bergeron v. Rochester Institute of Technology,* 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020), denying university's motion to dismiss for failure to refund tuition and fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Porter v. NBTY, Inc.,* 2019 WL 5694312 (N.D. Ill. Nov. 4, 2019), denying supplement manufacturer's motion for summary judgment on consumers' allegations of false advertising relating to whey protein content.

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

### ***Selected Class Settlements:***

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Benbow v. SmileDirectClub, LLC*, Case No. 2020-CH-07269 (Cir. Ct. Cook Cnty. 2021) – final approval granted for $11.5 million class settlement to resolve claims for alleged TCPA violations.

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812-KMK (S.D.N.Y. 2018) – final approval granted for $8.225 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. American Media, Inc.*, Case No. 16-cv-11367-JEL (E.D. Mich. 2017) – final approval granted for $7.6 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Rocchio v. Rutgers, The State University of New Jersey*, Case No. MID-L-003039-20 (Sup. Ct. Middlesex Cnty. 2022) – final approval granted for $5 million class settlement to resolve claims for failure to refund mandatory fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Heigl v. Waste Management of New York, LLC*, Case No. 19-cv-05487-WFK-ST (E.D.N.Y. 2021) – final approval granted for $2.7 million class settlement to resolve claims for charging allegedly unlawful fees pertaining to paper billing.

*Frederick v. Examsoft Worldwide, Inc.*, Case No. 2021L001116 (Cir. Ct. DuPage Cnty. 2022) – final approval granted for $2.25 million class settlement to resolve claims for alleged BIPA violations.

## SARAH N. WESTCOT

Sarah N. Westcot is a Partner with Bursor & Fisher, P.A. Ms. Westcot focuses her practice on complex business litigation, consumer class actions, and employment law disputes. She has represented clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Ms. Westcot served as trial counsel in *Ayyad v. Sprint Spectrum L.P.*, where Bursor & Fisher won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

Ms. Westcot also has significant experience in high-profile, multi-district litigations. She currently serves on the Plaintiffs' Steering Committee in *In re Zantac (Ranitidine) Products Liability Litigation,* MDL No. 2924 (S.D. Florida).

Ms. Westcot is admitted to the State Bars of California and Florida, and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California and the Southern and Middle Districts of Florida.

Ms. Westcot received her Juris Doctor from the University of Notre Dame Law School in 2009. During law school, Ms. Westcot was a law clerk with the Cook County State's Attorney's Office in Chicago and the Santa Clara County District Attorney's Office in San Jose, CA. She graduated with honors from the University of Florida in 2005.

**BURSOR & FISHER**
P.A.

### ALEC M. LESLIE

Alec Leslie is a Partner with Bursor & Fisher, P.A. He focuses his practice on consumer class actions, employment law disputes, and complex business litigation.

Alec is admitted to the State Bar of New York and is a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York. Alec was a Summer Associate with Bursor & Fisher prior to joining the firm.

Alec received his Juris Doctor from Brooklyn Law School in 2016, graduating *cum laude*. During law school, Alec served as an Articles Editor for Brooklyn Law Review. In addition, Alec served as an intern to the Honorable James C. Francis for the Southern District of New York and the Honorable Vincent Del Giudice, Supreme Court, Kings County. Alec graduated from the University of Colorado with a B.A. in Philosophy in 2012.

#### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Wright v. Southern New Hampshire Univ.*, Case No. 1:20-cv-00609-LM (D.N.H. 2021) – final approval granted for class settlement to resolve claims over COVID-19 tuition and fee refunds to students.

*Mendoza et al. v. United Industries Corp.*, Case No. 21PH-CV00670 (Phelps Cnty. Mo. 2021) – final approval granted for class settlement to resolve false advertising claims on insect repellent products.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, Case No. 8:19-cv-01203-JVS-DFM (C.D. Cal. 2021) – final approval granted for class settlement involving allegedly defective and dangerous chainsaws.

*Rocchio v. Rutgers Univ.*, Case No. MID-L-003039-20 (Middlesex Cnty. N.J. 2021) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*Malone v. Western Digital Corporation*, Case No. 5:20-cv-03584-NC (N.D. Cal.) – final approval granted for class settlement to resolve false advertising claims on hard drive products.

*Frederick et al. v. ExamSoft Worldwide, Inc.*, Case No. 2021L001116 (DuPage Cnty. Ill. 2021) – final approval granted for class settlement to resolve claims over alleged BIPA violations with respect to exam proctoring software.

### STEPHEN BECK

Stephen is an Associate with Bursor & Fisher, P.A. Stephen focuses his practice on complex civil litigation and class actions.

BURSOR&FISHER
P.A.

Stephen is admitted to the State Bar of Florida and is a member of the bars of the United States District Courts for the Southern and Middle Districts of Florida.

Stephen received his Juris Doctor from the University of Miami School of Law in 2018. During law school, Stephen received an Honors distinction in the Litigation Skills Program and was awarded the Honorable Theodore Klein Memorial Scholarship for excellence in written and oral advocacy. Stephen also received the CALI Award in Legislation for earning the highest grade on the final examination. Stephen graduated from the University of North Florida with a B.A. in Philosophy in 2015.

## **BRITTANY SCOTT**

Brittany Scott is an Associate with Bursor & Fisher, P.A. Brittany focuses her practice on data privacy, complex civil litigation, and consumer class actions. Brittany was an intern with Bursor & Fisher prior to joining the firm.

Brittany has substantial experience litigating consumer class actions, including those involving data privacy claims under statutes such as the Illinois Biometric Information Privacy Act, the Fair Credit Reporting Act, and the Michigan Preservation of Personal Privacy Act. In addition to data privacy claims, Brittany has significant experience in litigating class action claims involving false and misleading advertising.

Brittany is admitted the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the Eastern District of Wisconsin, and the Northern District of Illinois.

Brittany received her Juris Doctor from the University of California, Hastings College of the Law in 2019, graduating cum laude. During law school, Brittany was a member of the Constitutional Law Quarterly, for which she was the Executive Notes Editor. Brittany published a note in the Constitutional Law Quarterly entitled "Waiving Goodbye to First Amendment Protections: First Amendment Waiver by Contract." Brittany also served as a judicial extern to the Honorable Andrew Y.S. Cheng for the San Francisco Superior Court. In 2016, Brittany graduated from the University of California Berkeley with a B.A. in Political Science.

### ***Selected Class Settlements:***

*Morrissey v. Tula Life, Inc.,* Case No. 2021L0000646 (18th Judicial Circuit Court DuPage County 2021) – final approval granted for $4 million class settlement to resolve claims of cosmetics purchasers for alleged false advertising.

BURSOR & FISHER
P.A.

## MAX ROBERTS

Max Roberts is an Associate with Bursor & Fisher, P.A.  Max focuses his practice on complex civil litigation, data privacy, and class actions.  Max was a Summer Associate with Bursor & Fisher prior to joining the firm.

Max is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Northern, Southern, and Eastern Districts of New York, the Northern and Central Districts of Illinois, the Eastern District of Michigan, the District of Colorado, and the United States Court of Appeals for the Ninth Circuit.

Max received his Juris Doctor from Fordham University School of Law in 2019, graduating *cum laude.*  During law school, Max was a member of Fordham's Moot Court Board, the Brennan Moore Trial Advocates, and the Fordham Urban Law Journal, for which he published a note entitled *Weaning Drug Manufacturers Off Their Painkiller: Creating an Exception to the Learned Intermediary Doctrine in Light of the Opioid Crisis*.  In addition, Max served as an intern to the Honorable Vincent L. Briccetti of the Southern District of New York and the Fordham Criminal Defense Clinic.  Max graduated from Johns Hopkins University in 2015 with a B.A. in Political Science.

Outside of the law, Max is an avid triathlete.

### *Selected Published Decisions:*

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), reversing district court and holding that the California Invasion of Privacy Act § 631 requires prior consent to wiretapping.  Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Soo v. Lorex Corp.,* 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020), denying defendants' motion to compel arbitration and denying in part motion dismiss consumer protection claims in putative class action concerning security cameras.

*Salerno v. Florida Southern College*, 488 F. Supp. 3d 1211 (M.D. Fla. 2020), denying motion to dismiss student's allegations that university committed a breach of contract by failing to refund students after it shifted to online learning during the COVID-19 pandemic.

*Saleh v. Nike, Inc.*, --- F. Supp. 3d ---, 2021 WL 4437734 (C.D. Cal. Sept. 27, 2021), denying in part motion to dismiss alleged violations of California Invasion of Privacy Act.

*Bugarin v. All Nippon Airways Co.*, 2021 WL 4974978 (N.D. Cal. Oct. 26, 2021), denying motion to compel arbitration of airline passenger's breach of contract claims.

*Sholopa v. Turk Hava Yollari A.O., Inc. d/b/a Turkish Airlines*, 2022 WL 976825 (S.D.N.Y. Mar. 31, 2022), denying motion to dismiss passenger's allegations that airline committed a breach of contract by failing to refund passengers for cancelled flights during the COVID-19 pandemic.

BURSOR&FISHER
P.A.

### *Selected Class Settlements:*

*Miranda v. Golden Entertainment (NV), Inc.*, Case No. 2:20-cv-534-AT (D. Nev. 2021) – final approval granted for class settlement valued at over $4.5 million to resolve claims of customers and employees of casino company stemming from data breach.

*Malone v. Western Digital Corp.*, Case No. 5:20-cv-3584-NC (N.D. Cal. 2021) – final approval granted for class settlement valued at $5.7 million to resolve claims of hard drive purchasers for alleged false advertised.

*Frederick v. ExamSoft Worldwide, Inc.*, Case No. 2021-L-001116 (18th Judicial Circuit Court DuPage County, Illinois 2021) – final approval granted for $2.25 million class settlement to resolve claims of Illinois students for alleged violations of the Illinois Biometric Information Privacy Act.

## CHRISTOPHER R. REILLY

Chris Reilly is an Associate with Bursor & Fisher, P.A. Chris focuses his practice on consumer class actions and complex business litigation.

Chris is admitted to the State Bar of Florida and is a member of the bar of the United States District Courts for the Southern and Middle Districts of Florida.

Chris received his Juris Doctor from Georgetown University Law Center in 2020. During law school, Chris clerked for the Senate Judiciary Committee, where he worked on antitrust and food and drug law matters under Senator Richard Blumenthal. He has also clerked for the Mecklenburg County District Attorney's Office, the ACLU Prison Project, and the Pennsylvania General Counsel's Office. Chris served as Senior Editor of Georgetown's Journal of Law and Public Policy. In 2017, Chris graduated from the University of Florida with a B.A. in Political Science.

## JULIA K. VENDITTI

Julia Venditti is an Associate with Bursor & Fisher, P.A. Julia focuses her practice on complex civil litigation and class actions. Julia was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julia is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Julia received her Juris Doctor in 2020 from the University of California, Hastings College of the Law, where she graduated *cum laude* with two CALI Awards for the highest grade in her Evidence and California Community Property classes. During law school, Julia was a member of the UC Hastings Moot Court team and competed at the Evans Constitutional Law Moot Court Competition, where she finished as a national quarterfinalist and received a best brief award. Julia was also inducted into the UC Hastings Honors Society and was awarded Best Brief and an Honorable Mention for Best Oral Argument in her First-Year Moot Court section.

In addition, Julia served as a Research Assistant for her Constitutional Law professor, as a Teaching Assistant for Legal Writing & Research, and as a Law Clerk at the San Francisco Public Defender's Office. In 2017, Julia graduated *magna cum laude* from Baruch College/CUNY, Weissman School of Arts and Sciences, with a B.A. in Political Science.

### SEAN L. LITTERAL

Sean L. Litteral is an Associate with Bursor & Fisher, P.A. Sean focuses his practice on complex business litigation, consumer class actions, and employment law disputes. He holds degrees from Berea College, the London School of Economics and Political Science, and Berkeley Law.

Sean has represented clients in a variety of matters, including survivors against the Boy Scouts of America for covering up decades of sexual abuse; warehouse workers against Walmart for failing to comply with COVID-19 health and safety guidelines; and drivers against Corinthian International Parking Services for systematically violating California's wage and hour laws.

Sean clerked for the Alaska Supreme Court and served as a fellow for the U.S. House Committee on Education and Labor and the Atlanta City Council. He previously externed for the Special Litigation Section, Civil Rights Division of the U.S. Department of Justice; the Berkeley Environmental Law Clinic; and the Corporate Sustainability Program at the Pontificia Universidad Católica de Chile.

He has published in the UC Davis Environmental Law & Policy Journal, the Harvard Latinx Law Review, and the Stanford Law and Policy Review on a broad scope of matters, including corporate sustainability, international trade, and national security.

### JULIAN DIAMOND

Julian Diamond is an Associate with Bursor & Fisher, P.A. Julian focuses his practice on privacy law and class actions. Julian was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julian received his Juris Doctor from Columbia Law School, where he was a Harlan Fiske Stone Scholar. During law school, Julian was Articles Editor for the Columbia Journal of Environmental Law. Prior to law school, Julian worked in education. Julian graduated from California State University, Fullerton with a B.A. in History and a single subject social science teaching credential.

### MATTHEW GIRARDI

Matt Girardi is an Associate with Bursor & Fisher, P.A. Matt focuses his practice on complex civil litigation and class actions, and has focused specifically on consumer class actions involving product defects, financial misconduct, false advertising, and privacy violations. Matt was a Summer Associate with Bursor & Fisher prior to joining the firm.

Matt is admitted to the State Bar of New York, and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan

Matt received his Juris Doctor from Columbia Law School in 2020, where he was a Harlan Fiske Stone Scholar.  During law school, Matt was the Commentary Editor for the Columbia Journal of Tax Law, and represented fledgling businesses for Columbia's Entrepreneurship and Community Development Clinic.  In addition, Matt worked as an Honors Intern in the Division of Enforcement at the U.S. Securities and Exchange Commission.  Prior to law school, Matt graduated from Brown University in 2016 with a B.A. in Economics, and worked as a Paralegal Specialist at the U.S. Department of Justice in the Antitrust Division.

# EXHIBIT 3

| The Connor Group BIPA Lodestar Summary | | | |
|---|---|---|---|
| | | | |
| **ATTY** | **HOURS** | **RATE** | **TOTAL** |
| JIM | 11.1 | $ 950.00 | $10,545.00 |
| PLF | 9.7 | $ 700.00 | $6,790.00 |
| JKV | 26.3 | $ 350.00 | $9,205.00 |
| LSW | 5.2 | $ 325.00 | $1,690.00 |
| | 52.3 | | $28,230.00 |
| | | | |
| | | Expenses: | $643.16 |
| | | | |
| | | **Total:** | $28,873.16 |

Bursor Fisher, P.A. - The Connor Group BIPA Billing Diaries

| Date | Matter | Initials | Description | Time | Rate | Amount |
|------|--------|----------|-------------|------|------|--------|
| 2022.02.18 | The Connor Group BIPA | JKV | Email exchange with PLF re new retainer / new client matter (.1); Reviewed client documentation (.2); Call with JMF re opening new client matter number & uploading client docs to new folder on Box for same (.1); PSI research re The Connor Group, company information, holdings, locations, employee count, revenue, etc. (1.8) | 2.2 | $ 350.00 | $ 770.00 |
| 2022.02.18 | The Connor Group BIPA | JKV | Preparing draft complaint (1.2); Preparing placeholder class cert motion (.7) | 1.9 | $ 350.00 | $ 665.00 |
| 2022.02.24 | The Connor Group BIPA | JKV | Made revision to draft complaint & placeholder class cert motion re tenure of Plaintiff's employment with Defendant & circulated to PLF for review/redlines in email re same (.3) | 0.3 | $ 350.00 | $ 105.00 |
| 2022.02.24 | The Connor Group BIPA | JKV | Email exchange with PLF re edits to draft complaint & next steps, call with client re same, sent email to client explaining process of initiating lawsuit & circulating substantially finalized draft complaint for review and approval to file (.4) | 0.4 | $ 350.00 | $ 140.00 |
| 2022.02.25 | The Connor Group BIPA | JKV | Call with client re review of draft complaint, made revision per client feedback, conf. w/ client re approval to file complaint, call with PLF re same, and finalized complaint & placeholder class cert motion and forwarded same to C.Malmstrom for filing in email re same (.5) | 0.5 | $ 350.00 | $ 175.00 |
| 2022.03.04 | The Connor Group BIPA | JKV | Received file-stamped copy of complaint from C.Malmstrom & email exchange re service & filing the class cert motion / next steps (.1); Uploaded file-stamped complaint to box (.1) | 0.2 | $ 350.00 | $ 70.00 |
| 2022.03.07 | The Connor Group BIPA | JKV | Downloaded filed class cert motion & issued summons and uploaded same to box (.2) | 0.2 | $ 350.00 | $ 70.00 |
| 2022.05.04 | The Connor Group BIPA | JKV | Email exchange with client re status of litigation (.2) | 0.2 | $ 350.00 | $ 70.00 |
| 2022.05.11 | The Connor Group BIPA | JIM | Introductory telephone call with defense counsel | 0.2 | $ 950.00 | $ 190.00 |
| 2022.05.11 | The Connor Group BIPA | JKV | Conf. w/ PLF re def counsel call with JIM, Def's opening pre-suit settlement demand, & Pltf's counter (.3) | 0.3 | $ 350.00 | $ 105.00 |
| 2022.05.11 | The Connor Group BIPA | PLF | Confer with JIM and JKV re introductory call and prospect for settlement | 0.5 | $ 700.00 | $ 350.00 |
| 2022.05.12 | The Connor Group BIPA | JIM | Review and respond to settlement emails from defense counsel | 0.3 | $ 950.00 | $ 285.00 |
| 2022.05.17 | The Connor Group BIPA | JIM | Review and analyze settlement offer and confer with P. Fraietta to formulate a counter-demand; call and email defense counsel regarding same | 0.7 | $ 950.00 | $ 665.00 |
| 2022.05.17 | The Connor Group BIPA | PLF | Confer with JIM re settlement counter | 0.4 | $ 700.00 | $ 280.00 |
| 2022.05.18 | The Connor Group BIPA | JIM | Settlement call with defense counsel, and debrief with P. Fraietta thereafter | 0.4 | $ 950.00 | $ 380.00 |
| 2022.05.18 | The Connor Group BIPA | PLF | Confer with JIM re settlement positioning (0.2) | 0.2 | $ 700.00 | $ 140.00 |
| 2022.06.02 | The Connor Group BIPA | JIM | Follow up with defense counsel about next steps in settlement negotiations | 0.2 | $ 950.00 | $ 190.00 |
| 2022.06.03 | The Connor Group BIPA | JIM | Settlement telephone call with defense counsel | 0.2 | $ 950.00 | $ 190.00 |
| 2022.06.06 | The Connor Group BIPA | JIM | Confer with P. Fraietta about the status of settlement discussions and next steps; telephone call with defense counsel to continue settlement talks | 0.8 | $ 950.00 | $ 760.00 |
| 2022.06.06 | The Connor Group BIPA | PLF | Confer with JIM re status of settlement talks (0.4) | 0.4 | $ 700.00 | $ 280.00 |
| 2022.06.24 | The Connor Group BIPA | JIM | Telephone call with defense counsel to continue settlement negotiations, and confer with P. Fraietta about same and next steps | 0.6 | $ 950.00 | $ 570.00 |
| 2022.06.24 | The Connor Group BIPA | PLF | Confer with JIM re settlement positioning (0.2) | 0.2 | $ 700.00 | $ 140.00 |
| 2022.06.27 | The Connor Group BIPA | JIM | Conferences with defense counsel and P. Fraietta regarding settlement; agree to material terms of settlement with defense counsel and exchange emails about same | 3.0 | $ 950.00 | $ 2,850.00 |
| 2022.06.27 | The Connor Group BIPA | JKV | Call with PLF re status of settlement negotiations, final class deal & next steps (.2) | 0.2 | $ 350.00 | $ 70.00 |
| 2022.06.27 | The Connor Group BIPA | PLF | Confer with JIM and JKV re settlement negotiations (0.5) | 0.5 | $ 700.00 | $ 350.00 |
| 2022.06.28 | The Connor Group BIPA | JIM | Confer with P. Fraietta about latest settlement discussion with defense counsel | 0.2 | $ 950.00 | $ 190.00 |
| 2022.06.28 | The Connor Group BIPA | PLF | Confer with JIM re settlement posture (0.2) | 0.2 | $ 700.00 | $ 140.00 |
| 2022.07.01 | The Connor Group BIPA | JIM | Confer with J. Venditti about classwide settlement terms and about drafting a settlement agreement with supporting exhibits and documents | 0.5 | $ 950.00 | $ 475.00 |
| 2022.07.01 | The Connor Group BIPA | JKV | Call with JIM re final settlement terms, preparing draft SA and eta on same, & next steps (.3) | 0.3 | $ 350.00 | $ 105.00 |
| 2022.07.01 | The Connor Group BIPA | JKV | Reviewed order granting joint motion to stay proceedings pendling settlement negotiations & updated box re same (.2) | 0.2 | $ 350.00 | $ 70.00 |
| 2022.07.06 | The Connor Group BIPA | JKV | Began drafting classwide settlement agreement (1.1) | 1.1 | $ 350.00 | $ 385.00 |
| 2022.07.12 | The Connor Group BIPA | JKV | Finished preparing draft SA & circulated to team for review in email re same (1.0) | 1 | $ 350.00 | $ 350.00 |

Bursor Fisher, P.A. - The Connor Group BIPA Billing Diaries

| Date | Client | Timekeeper | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 2022.07.14 | The Connor Group BIPA | JKV | Prepared notice documents as exhibits to draft SA & circulated drafts to team for review in email re same (.9) | 0.9 | $ 350.00 | $ 315.00 |
| 2022.07.19 | The Connor Group BIPA | JIM | Review and comment on draft settlement agreement and notice documents | 1.5 | $ 950.00 | $ 1,425.00 |
| 2022.07.19 | The Connor Group BIPA | JKV | Email exchange with JIM re draft SA and notice documents, finalized drafts of same & circulated to Def counsel for review (.4) | 0.4 | $ 350.00 | $ 140.00 |
| 2022.07.19 | The Connor Group BIPA | PLF | Review and revise draft settlement agreement and notice documents (1.8) | 1.8 | $ 700.00 | $ 1,260.00 |
| 2022.08.04 | The Connor Group BIPA | JIM | Email defense counsel to follow up on getting defendant's comments to the draft settlement agreement documents | 0.2 | $ 950.00 | $ 190.00 |
| 2022.08.17 | The Connor Group BIPA | JIM | Follow up with defense counsel about whether defendant has any comments to the draft settlement agreement and exhibits | 0.2 | $ 950.00 | $ 190.00 |
| 2022.08.19 | The Connor Group BIPA | JIM | Email defense counsel regarding next steps for finalizing settlement agreement | 0.2 | $ 950.00 | $ 190.00 |
| 2022.08.24 | The Connor Group BIPA | JIM | Review and comment on defendant's redlines to draft settlement agreement, and confer with internal team about how to respond | 1.9 | $ 950.00 | $ 1,805.00 |
| 2022.08.24 | The Connor Group BIPA | JKV | Reviewed Def counsel redlines to draft settlement agreement & sent email to team re same (.6); Further email exchanges with PLF re same (.3) | 0.9 | $ 350.00 | $ 315.00 |
| 2022.08.24 | The Connor Group BIPA | JKV | Further email exchanges with JIM & PLF re def counsel redlines to draft SA and further edits to be made (.2); Implemented suggested edits to draft SA & circulated updated copy to def counsel in email re same / next steps (.4) | 0.6 | $ 350.00 | $ 210.00 |
| 2022.08.30 | The Connor Group BIPA | JKV | Call with PLF re notice documents and incentive award / call with def counsel re same (.1) | 0.1 | $ 350.00 | $ 35.00 |
| 2022.08.30 | The Connor Group BIPA | PLF | Call with defense counsel re settlement agreement (0.4) | 0.4 | $ 700.00 | $ 280.00 |
| 2022.09.06 | The Connor Group BIPA | JKV | Call with PLF re: status of settlement negotiations (.1) | 0.1 | $ 350.00 | $ 35.00 |
| 2022.09.06 | The Connor Group BIPA | PLF | Call with JKV re status of settlement negotiation (0.1) | 0.1 | $ 700.00 | $ 70.00 |
| 2022.09.09 | The Connor Group BIPA | JKV | Calls with L.Sironski-White re drafting PA motion (.7) | 0.7 | $ 350.00 | $ 245.00 |
| 2022.09.09 | The Connor Group BIPA | JKV | Call with PLF re PA motion assigned to new associate & eta on same (.1) | 0.1 | $ 350.00 | $ 35.00 |
| 2022.09.09 | The Connor Group BIPA | LSW | Speak with JV about proposed settlement | 0.5 | $ 325.00 | $ 162.50 |
| 2022.09.09 | The Connor Group BIPA | PLF | Call with LSW re PA motion (0.1) | 0.1 | $ 700.00 | $ 70.00 |
| 2022.09.12 | The Connor Group BIPA | JKV | Sent email to L.Sironski-White re: docs & info for drafting PA motion (.5) | 0.5 | $ 350.00 | $ 175.00 |
| 2022.09.12 | The Connor Group BIPA | JKV | Responded to def counsel email re eta on draft PA motion (.1) | 0.1 | $ 350.00 | $ 35.00 |
| 2022.09.14 | The Connor Group BIPA | LSW | Preliminary approval motion documents drafting | 3.2 | $ 325.00 | $ 1,040.00 |
| 2022.09.15 | The Connor Group BIPA | JKV | Reviewed and redlined LSW draft PA motion & forwarded updated drafts to team for review in email re same (1.9) | 1.9 | $ 350.00 | $ 665.00 |
| 2022.09.15 | The Connor Group BIPA | LSW | Prelim approval motion drafting | 1.5 | $ 325.00 | $ 487.50 |
| 2022.09.16 | The Connor Group BIPA | JKV | Made edits to draft PA motion and settlement agreement, call with PLF re same, & circulated updated SA and PA motion to defense counsel for review in email re same (.9) | 0.9 | $ 350.00 | $ 315.00 |
| 2022.09.16 | The Connor Group BIPA | PLF | Call with JKV re status of PA briefing (0.3) | 0.3 | $ 700.00 | $ 210.00 |
| 2022.09.22 | The Connor Group BIPA | JKV | Sent email to def counsel requesting confirmation that the draft SA is in final form / ready for execution & re eta on redlines to draft PA motion (.2) | 0.2 | $ 350.00 | $ 70.00 |
| 2022.09.28 | The Connor Group BIPA | JKV | Sent email to def counsel re: eta on redlines to draft PA motion (.2) | 0.2 | $ 350.00 | $ 70.00 |
| 2022.10.10 | The Connor Group BIPA | JKV | Call with PLF re: def counsel objections to redlines to draft SA (.2); Reviewed same & prepared compare report showing all changes made to the previous version, analyzed changes, & forwarded all versions and compare report to PLF in email re same (.3) | 0.5 | $ 350.00 | $ 175.00 |
| 2022.10.10 | The Connor Group BIPA | PLF | Call with JKV re redlines to settlement agreement (0.2) | 0.2 | $ 700.00 | $ 140.00 |
| 2022.10.11 | The Connor Group BIPA | JKV | Email exchange with PLF re docs to circulate to def counsel in advance of call tomorrow, prepared same & forwarded old and new versions of draft settlement agreement along with a compare report showing all changes to def counsel in email re same (.3) | 0.3 | $ 350.00 | $ 105.00 |
| 2022.10.11 | The Connor Group BIPA | PLF | Emails to JKV re finalizing settlement agreement (0.3) | 0.3 | $ 700.00 | $ 210.00 |

Bursor Fisher, P.A. - The Connor Group BIPA Billing Diaries

| Date | Matter | Atty | Description | Hours | Rate | Amount |
|---|---|---|---|---|---|---|
| 2022.10.12 | The Connor Group BIPA | JKV | Call with def counsel & PLF to review B&F redlines to draft settlement agreement, def counsel concerns re same, finalizing same and getting signatures, & finalizing and filing draft PA motion (.3); Finalized draft SA as per call with def counsel & circulated execution copy with Ex. A attached in combined pdf in email re same (.3); Reviewed final settlement agreement & prepared notes for discussion re: material terms of same on upcoming call with client (.3); Call with client re material terms of final SA (.3); Sent final pdf SA to client for signatures via Adobe eSign (.1) | 1.3 | $ 350.00 | $ 455.00 |
| 2022.10.12 | The Connor Group BIPA | PLF | Call re settlement agreement and finalizing same (0.5) | 0.5 | $ 700.00 | $ 350.00 |
| 2022.10.13 | The Connor Group BIPA | JKV | Called client re executing the final SA by completing the pending e-Sign and sent text message to client re same (.2); Conf. w/ PLF re same (.1) | 0.3 | $ 350.00 | $ 105.00 |
| 2022.10.13 | The Connor Group BIPA | PLF | Call with JKV re obtaining client signature (0.1) | 0.1 | $ 700.00 | $ 70.00 |
| 2022.10.14 | The Connor Group BIPA | JKV | Reviewed completed SA from client & combined with signed counterparts from defendant and PLF (.2); Forwarded same to def counsel in email requesting final signature (.1) | 0.3 | $ 350.00 | $ 105.00 |
| 2022.10.17 | The Connor Group BIPA | JKV | Reviewed fully executed SA from defense counsel & uploaded to Box (.1) | 0.1 | $ 350.00 | $ 35.00 |
| 2022.10.20 | The Connor Group BIPA | JKV | Did final review and edits of PA motion & supporting docs to be filed, reviewed judge's individual procedures and case calendar, & forwarded final and near-final moving papers to team in email re same / next steps (2.3); Call with PLF re finalizing and filing near-final PA motion (.2); Call with courtroom deputy re available dates for presentment of PA motion (.2); Conf. w/ PLF re same (.1); Made further edits to near final draft PA motion and supporting docs based on PLF suggestions (.4); Sent email to C.Malmstrom re: availability to handle in-person presentment hearing on various dates (.3); Prepared draft unopposed motion for leave to file oversized brief instanter (.4); Email exchange with C.Malmstrom re available options for presenment hearing (.1); Sent email to def counsel re same (.2) | 4.2 | $ 350.00 | $ 1,470.00 |
| 2022.10.20 | The Connor Group BIPA | PLF | Work with JKV to finalize PA motion (1.0) | 1.0 | $ 700.00 | $ 700.00 |
| 2022.10.21 | The Connor Group BIPA | JKV | Email exchange with defense counsel re date options for PA motion presentment hearing (.1); Updated draft PA motion / supporting docs and draft motion for page extension & forwarded final docs to be filed to local counsel in email re same (.4) | 0.5 | $ 350.00 | $ 175.00 |
| 2022.10.25 | The Connor Group BIPA | JKV | Call with PLF re PA hearing by phone and handling same & prepared NOI for PLF (.3) | 0.3 | $ 350.00 | $ 105.00 |
| 2022.10.25 | The Connor Group BIPA | PLF | Call with JKV re PA hearing prep (0.3) | 0.3 | $ 700.00 | $ 210.00 |
| 2022.10.26 | The Connor Group BIPA | JKV | Conf. w/ PLF re outcome of PA hearing (.2) | 0.2 | $ 350.00 | $ 70.00 |
| 2022.10.26 | The Connor Group BIPA | JKV | Retrieved/reviewed minute order re PA motion & order granting PA and uploaded same to Box, calendared dates and deadlines from same, & forwarded PA order to settlement administrator in email re same (.3); Forwarded final SA & approved notice in word and further email exchange with settlement administrator re same (.2) | 0.5 | $ 350.00 | $ 175.00 |
| 2022.10.26 | The Connor Group BIPA | PLF | Prep for and argue preliminary approval motion (1.0) | 1.0 | $ 700.00 | $ 700.00 |
| 2022.11.04 | The Connor Group BIPA | JKV | Reviewed/analyzed draft timeline spreadsheet from settlement administrator re settlement approval proceedings and distribution / other relevant dates and deadlines & sent response email to settlement administrator re potential errors / discrepancies between draft timeline and PA order/SA deadlines (.8) | 0.8 | $ 350.00 | $ 280.00 |
| 2022.11.04 | The Connor Group BIPA | PLF | Review/analyze settlement timeline (0.5) | 0.5 | $ 700.00 | $ 350.00 |
| 2022.11.09 | The Connor Group BIPA | JKV | Compiled pdf versions of "Important Docs" to upload to settlement website & sent email to settlement admin re same (.2) | 0.2 | $ 350.00 | $ 70.00 |
| 2022.11.09 | The Connor Group BIPA | JKV | Further email exchanges settlement admin re docs for settlement website & launching same (.2) | 0.2 | $ 350.00 | $ 70.00 |
| 2022.11.23 | The Connor Group BIPA | PLF | Attention to ensuring notice is disseminated in accordance with deadline (0.7) | 0.7 | $ 700.00 | $ 490.00 |

| Bursor & Fisher, P.A. - The Connor Group Expenses | | | |
|---|---|---|---|
| | | | |
| | | $ 643.16 | Filing Fees |
| | | **$ 643.16** | **Total Expenses** |
| | | | |
| **Filing Fees** | | | |
| | | | |
| **DATE** | **MATTER** | **AMOUNT** | **DESCRIPTION** |
| 2022.09.16 | The Connor Group BIPA | $ 643.16 | Wolf Haldenstein Adler Freeman & Herz LLP - Filing Reimbursement |
| | | **$ 643.16** | **Total Filing Fees** |