### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| BELICIA CRUZ, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Civil Action No. 1:22-cv-01966 |
| v. | Hon. Sharon Johnson Coleman |
| THE CONNOR GROUP, A REAL ESTATE INVESTMENT FIRM, LLC, | Hon. Magistrate Gabriel A. Fuentes |
| Defendant. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Dated: January 10, 2023

**BURSOR & FISHER, P.A.**
Joseph I. Marchese *
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
Email: jmarchese@bursor.com
      pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Julia K. Venditti *
1990 N. California Boulevard, Suite 940
Walnut Creek, CA 94596
Tel: (925) 300-4455
Fax: (925) 407-2700
Email: jvenditti@bursor.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Carl V. Malmstrom
ARDC No. 6295219
111 W. Jackson Street, Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
Email: malmstrom@whafh.com

*Class Counsel*

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2

TERMS OF THE SETTLEMENT .................................................................................... 3

    A.    Class Definition ................................................................................. 3

    B.    Monetary And Prospective Relief ..................................................... 4

    C.    Release ............................................................................................. 4

    D.    Notice And Administrative Expenses ................................................ 4

    E.    Service Award .................................................................................. 5

    F.    Attorneys' Fees, Costs, And Expenses ............................................. 5

ARGUMENT ...................................................................................................................... 5

I.    THE SETTLEMENT SHOULD BE FINALLY APPROVED ......................... 5

    A.    Plaintiff And Proposed Class Counsel Have Adequately Represented The Class ...................................................................... 6

    B.    The Settlement Was Reached As A Result Of Arm's-Length Negotiations Between The Parties .................................................... 9

    C.    The Settlement Treats All Settlement Class Members Equally ............ 9

    D.    The Relief Secured For The Settlement Class Is Adequate And Warrants Approval ......................................................................... 10

        1.    The Cost, Risk, And Delay Of Further Litigation Compared To The Settlement's Benefits Favors Final Approval ................. 10

        2.    The Method Of Distributing Relief To The Settlement Class Members Is Effective And Supports Final Approval ......... 12

        3.    The Terms Of The Requested Attorneys' Fees Are Reasonable .................................................................................. 12

    E.    Class Members Overwhelmingly Support The Settlement .................. 13

    F.    The Stage Of The Proceedings And The Amount Of Discovery Completed At The Time Of Settlement Support The Settlement .......... 14

II.    THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ...................................................................................................... 14

i

A.     The Class Is Sufficiently Numerous And Joinder Is Impracticable ........................ 15

B.     Common Questions Of Law And Fact Predominate ................................................. 15

C.     Plaintiff's Claims Are Typical Of The Class ............................................................. 17

D.     Plaintiff And Proposed Class Counsel Will Adequately Protect The
       Interests Off The Settlement Class .......................................................................... 17

E.     A Class Action Is The Superior Method Of Resolving This
       Controversy .............................................................................................................. 18

F.     The Class Is Ascertainable ....................................................................................... 20

CONCLUSION ...................................................................................................................... 21

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591 (1997)..................................................................................................... 15

*Amgen Inc. v. Conn. Ret. Plans and Tr. Funds,*
   568 U.S. 455 (2013)..................................................................................................... 15

*Arreola v. Godinez,*
   546 F.3d 788 (7th Cir. 2008) ....................................................................................... 17

*Barnes v. Air Line Pilots Ass'n, Int'l,*
   310 F.R.D. 551 (N.D. Ill. 2015)............................................................................. 15, 19

*Bell v. PNC Bank, Nat'l Ass'n,*
   800 F.3d 360 (7th Cir. 2015) ....................................................................................... 16

*Bernal v. NRA Group, LLC,*
   318 F.R.D. 64 (N.D. Ill. 2016)..................................................................................... 20

*Boundas v. Abercrombie & Fitch Stores, Inc.,*
   280 F.R.D. 408 (N.D. Ill. 2012)................................................................................... 19

*Cothron v. White Castle System, Inc.,*
   20 F.4th 1156 (7th Cir. 2021) ........................................................................................ 8

*Gehrich v. Chase Bank USA, N.A.,*
   316 F.R.D. 215 (N.D. Ill. 2016)................................................................................... 10

*Goldsmith v. Tech. Sols. Co.,*
   1995 WL 17009594 (N.D. Ill. Oct. 10, 1995).............................................................. 11

*Golon v. Ohio Savs. Bank,*
   1999 WL 965593 (N.D. Ill. Oct. 15, 1999).................................................................. 16

*Hale v. State Farm Mut. Auto. Ins. Co.,*
   2018 WL 6606079 (S.D. Ill. Dec. 16, 2018).................................................................. 6

*In re AT & T Mobility Wireless Data Servs. Sales Litig.,*
   270 F.R.D. 330 (N.D. Ill. 2010)..................................................................................... 6

*In re AT & T Sales Tax Litig.,*
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ..................................................................... 11, 14

*In re Facebook Biometric Info. Privacy Litig.,*
   326 F.R.D. 535 (N.D. Cal. 2018).................................................................................. 19

iii

*In re Mexico Money Transfer Litig.*,
  164 F.Supp.2d 1002 (N.D. Ill. 2000) ................................................................. 13

*In re Southwest Airlines Voucher Litig.*,
  2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ....................................................... 11

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ................................................................................. 6

*Jackson v. Nat'l Action Fin. Servs., Inc.*,
  227 F.R.D. 284 (N.D. Ill. 2005) .......................................................................... 19

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ................................................................. 15, 20, 21

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................................ 10

*Osada v. Experian Info. Sols., Inc.*,
  290 F.R.D. 485 (N.D. Ill. 2012) .......................................................................... 18

*Oshana v. Coca-Cola Co.*,
  472 F.3d 506 (7th Cir. 2006) ............................................................................... 17

*Parker v. Time Warner Entm't Co.*,
  331 F.3d 13 (2d Cir. 2003) .................................................................................. 11

*Quiroz v. Revenue Prod. Mgmt., Inc.*,
  252 F.R.D. 438 (N.D. Ill. 2008) .......................................................................... 18

*Retired Chi. Police Ass'n v. City of Chi.*,
  7 F.3d 584 (7th Cir. 1993) ............................................................................ 17, 18

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................ 12, 13

*Schulte v. Fifth Third Bank*,
  2010 WL 8816289 n.5 (N.D. Ill. 2010) ................................................................. 9

*Snyder v. Ocwen Loan Servicing, LLC*,
  *et al.*, 2019 WL 2103379, (N.D. Ill. Apr. 14, 2019) ......................................... 7, 9

*Starr v. Chi. Cut Steakhouse*,
  75 F. Supp. 3d 859 (N.D. Ill. 2014) .................................................................... 17

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ............................................................................... 16

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ................................................................................. 6

*Toney v. Quality Res., Inc.*,
   323 F.R.D. 567 (N.D. Ill. 2018) ........................................................................ 20

*Wal-Mart v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................ 16

*Watson v. Legacy Healthcare Financial Services, LLC*,
   N.E.3d --, 2021 WL 5917935 (Ill. App. Ct. Dec. 15, 2021) ............................. 8

**STATUTES**

740 ILCS 14/1 ..................................................................................................... 2

**RULES**

Fed. R. Civ. P. 23 ........................................................................................ 6, 10, 20

Fed. R. Civ. P. 23 (a) ...................................................................................... 15, 17

Fed R. Civ. P. 23(a)(1) ......................................................................................... 15

Fed. R. Civ. P. 23 (a)(2) ....................................................................................... 15

Fed. R. Civ. P. 23(a)(4) ................................................................................... 17, 19

Fed. R. Civ. P (b)(3) .................................................................................. 15, 18, 19

Fed. R. Civ. P. 23(b)(3)(B) ................................................................................... 19

Fed. R. Civ. P. 23(e)(2) ......................................................................... 6, 9, 10, 11

Fed. R. Civ. P. 23(e)(2)(A) ..................................................................................... 6

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................................... 9

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................... 10

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C)(iii) .............................................................................. 12

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................... 9

Fed. R. Civ. P. 23 (e)(3) ....................................................................................... 13

Fed. R. Civ. P. 26 ................................................................................................... 2

**OTHER AUTHORITIES**

2 NEWBERG ON CLASS ACTIONS § 4:72 ........................................................................ 20

4 NEWBERG ON CLASS ACTIONS § 13:53 ...................................................................... 12

5 NEWBERG ON CLASS ACTIONS § 15:83 ...................................................................... 13

**<u>INTRODUCTION</u>**

On October 26, 2022, this Court preliminarily approved the class action settlement between Plaintiff Belicia Cruz ("Plaintiff") and Defendant The Connor Group, A Real Estate Investment Firm, LLC ("TCG" or "Defendant") (collectively, the "Parties") and directed that notice be sent to the Settlement Class. *See* ECF No. 23. The settlement administrator has implemented the Court-approved notice plan and direct notice has reached over **<u>99%</u>** of the certified Settlement Class. The reaction from the class has been overwhelmingly positive. Specifically, of the 264 settlement class members, thus far **<u>zero</u>** have objected or requested to be excluded from the Settlement.[1] The Settlement is an excellent result for the class and the Court should grant final approval.

The strength of the Settlement speaks for itself. After extensive negotiations spanning over many months, the Parties reached a proposed settlement (the "Settlement" or "Agreement") that creates a Settlement Fund of $237,600 and provides a substantial benefit to the 264 Settlement Class Members. Specifically, every Settlement Class Member who does not exclude him or herself from the Settlement will <u>automatically</u> receive a *pro rata* cash payment from the Net Settlement Fund, which Class Counsel estimates will be approximately $535 per Settlement Class Member. Additionally, the Settlement also provides meaningful prospective relief, as Defendant acknowledges that it is no longer using the biometric function of the timeclocks at issue in this case and has secured consents for the timeclock system that Defendant currently utilizes. If approved, the Settlement will bring certainty, closure, and significant and valuable relief for individuals to what otherwise would likely be contentious and costly litigation

---

[1] The deadline for Settlement Class Members to object or request exclusion was January 3, 2023. *See* ECF No. 23 ¶ 15.

regarding Defendant's alleged unlawful collection, use, storage, and disclosure of individuals' biometric identifiers and/or biometric information.

The Court need not evaluate the Settlement in a vacuum, as it follows – and eclipses – numerous other BIPA settlements that came before it. *See, e.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty.) (providing only credit monitoring); *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty.) ($270 per claimant with credit monitoring, reverting funds to defendant); *Sekura v. L.A. Tan Enterprises, Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cty.) (paying claimants approximately $150 each); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cty.) (paying claimants approximately $260 each).

Given the relief proposed by the Settlement, the Court should not hesitate to find that the Settlement is well within the range of approval. Accordingly, Plaintiff respectfully requests that the Court grant final approval to the Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 28, 2022, Plaintiff filed a putative class action in the Circuit Court of Cook County against Defendant. *See* Declaration of Philip L. Fraietta ("Fraietta Decl.") ¶ 4. The material allegations of the Complaint were that Defendant collected, stored and used – without first providing notice, obtaining informed written consent or publishing data retention policies – the finger and/or handprints and associated personally identifying information of hundreds of its employees (and former employees), who were required to "clock in" with their finger and/or handprints, in violation of the BIPA, 740 ILCS 14/1 *et seq*. *Id.* On April 15, 2022, TCG removed the Action to the United States District Court for the Northern District of Illinois (the "District Court"), where it was assigned Case No. 1:22-cv-01966. *Id.* ¶ 5 (citing ECF No. 1).

From the outset of the case, the Parties discussed the prospect of an early resolution, and as part of their obligations under Fed. R. Civ. P. 26, engaged in direct communications, which

included the informal exchange of relevant information surrounding the alleged claims. *See id.* ¶ 6. Those discussions eventually led to a period of active, private settlement negotiations between the Parties beginning in April 2022 that continued over the next several months. *See id.*

On April 21, 2022, TCG filed, with Plaintiff's agreement, an Unopposed Motion for an Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint, requesting that the Court extend its deadline to file a responsive pleading by 28 days, until May 19, 2022. *See id.* ¶ 8 (citing ECF No. 8). The Court granted TCG's Unopposed Motion the same day. *See id.* (citing ECF No. 10). Subsequently, on May 17, 2022, TCG filed a Second Unopposed Motion for an Extension of Time to Answer or Otherwise Respond to Plaintiff's Complaint, requesting, with Plaintiff's agreement and for the purpose of facilitating settlement discussions, that the Court extend its deadline to file a responsive pleading by an additional 45 days, until July 3, 2022, and the Court again granted TCG's Unopposed Motion the same day. *See id.* ¶ 9 (ECF Nos. 11-12). The Parties continued to engage in settlement discussions over the next several weeks. Ultimately, toward the end of June 2022, the Parties reached an agreement on all material terms of a class action settlement. *See id.* ¶ 10.

Thereafter, the Parties drafted and executed the Settlement Agreement and related documents, which are submitted herewith. *See id.* ¶ 11. The Court preliminarily approved the Settlement on October 26, 2022. *See id.* (citing ECF No. 23).

## TERMS OF THE SETTLEMENT

The key terms of the Settlement, attached to the Fraietta Declaration as Exhibit 1, are briefly summarized as follows:

### A. Class Definition

The "Settlement Class" is defined as:

> [A]ll individuals who worked or are currently working for
> Defendant in the State of Illinois, including current or former

> temporary workers or contractors engaged by Defendant, who had
> their Biometric Identifiers and/or Biometric Information allegedly
> collected, captured, received, or otherwise obtained or disclosed by
> Defendant or its agents, without first signing a written consent
> form, for the period extending from February 28, 2017, to and
> through April 8, 2022.

Settlement ¶ 1.8.  According to Defendant's records, there are 264 persons in the Settlement

Class.  *See* Fraietta Decl. ¶ 13.

### B.  Monetary And Prospective Relief

Defendant will establish a non-reversionary Settlement Fund of up to $237,600 from

which each Settlement Class Member will <u>automatically</u> receive a *pro rata* cash payment from

the Net Settlement Fund, estimated to be approximately $535 per Settlement Class Member.  *See*

Settlement ¶¶ 1.33, 2.1(a)-(f); Fraietta Decl. ¶ 14.  The Settlement Fund will also be used to pay

notice and administrative expenses, attorneys' fees, costs, and expenses, and an incentive award

to the Class Representatives.  *See* Settlement ¶¶ 1.18, 2.1(a)-(b).

Additionally, Defendant acknowledges it will provide all notices and procure consent as

required by BIPA when it collects, utilizes, or stores biometric data.  *See id.* ¶ 2.2(a).

### C.  Release

In exchange for the relief described above, Defendant and each of its related and

affiliated entities as well as all "Released Parties," as defined in ¶ 1.27 of the Settlement, will

receive a full release of all claims arising out of or related to biometrics, finger scan data, or

BIPA.  *See also id.* ¶¶ 1.26-1.28, 3.1-3.2, 4.7.

### D.  Notice And Administrative Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the

Agreement and any other notice as required by the Court, as well as all costs of administration of

the Settlement.  *See id.* ¶¶ 1.18-1.19, 1.29.

### E.      Service Award

In recognition of her efforts on behalf of the Settlement Class, Defendant has agreed that

Plaintiff may receive, subject to Court approval, a service award of up to $5,000 from the

Settlement Fund, as appropriate compensation for her time and effort serving as Class

Representative and as a party to the Action.  *See id.* ¶ 8.3.

### F.      Attorneys' Fees, Costs, And Expenses

Defendant has agreed that the Settlement Fund may also be used to pay Class Counsel

reasonable attorneys' fees and to reimburse costs and expenses in this Action, in an amount to be

approved by the Court.  *Id.* ¶ 8.1.  Class Counsel has agreed to petition the Court for attorneys'

fees, costs, and expenses of no more than thirty-five percent of the Settlement Fund.  *See id.*

## <u>ARGUMENT</u>

## I.      THE SETTLEMENT SHOULD BE FINALLY APPROVED

At the final approval stage, the fairness analysis is guided by Rule 23(e), which states that

a district court should approve a class settlement only after a hearing and only on finding that it

is fair, reasonable, and adequate considering whether:

(A)     The class representatives and class counsel have adequately represented the class;

(B)     The proposal was negotiated at arm's length;

(C)     The relief provided for the class is adequate, taking into account:

    i.     the costs, risks, and delay of trial and appeal;

    ii.     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    iii.     the terms of any proposed attorneys' fees, including timing of payment; and

    iv.     any agreement required to be identified under Rule 23(e)(3); and

(D)     The proposal treats class members equally relative to each other.

Fed. R. Civ. P. 23(e)(2).  Notably, the Seventh Circuit has identified the following factors in determining whether a settlement is fair, reasonable, and adequate under Rule 23(e): (1) the strength of the plaintiff's case compared to the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; (5) the stage of the proceedings and the amount of discovery completed." *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *2 (S.D. Ill. Dec. 16, 2018) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006)); *see also* Fed. R. Civ. P. 23, Advisory Committee's Note to 2018 Amendment ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").  Moreover, "[f]ederal courts naturally favor the settlement of class action litigation." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 345 (N.D. Ill. 2010) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)) (internal quotation marks omitted).

At the preliminary approval stage, this Court held that, "the Settlement Agreement is fair, reasonable, and adequate."  ECF No. 23 ¶ 4.  This Court should grant final approval and find the Settlement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e).

### A. Plaintiff And Proposed Class Counsel Have Adequately Represented The Class

The first Rule 23(e)(2) factor considers whether the class representative and class counsel have adequately represented the class.  *See* Fed. R. Civ. P. 23(e)(2)(A).  In considering this factor, courts are to examine whether plaintiff and class counsel had adequate information to negotiate a class-wide settlement, taking into account (i) the nature and amount of discovery completed, whether formally or informally, and (ii) the "actual outcomes" of other, similar cases. Fed. R. Civ. P. 23(e) Advisory Committee's Note to 2018 Amendment.  Ultimately, this factor is

generally satisfied where the named plaintiff participated in the case diligently, and where class counsel fought hard on behalf of plaintiff and the class throughout the litigation. *See Snyder v. Ocwen Loan Servicing, LLC et al.,* 2019 WL 2103379, at \*4, (N.D. Ill. Apr. 14, 2019).

Here, Plaintiff was extensively involved in the case, including helping her attorneys investigate her claims, preparing and reviewing the Class Action Complaint, and conferring with her counsel throughout the litigation, including the settlement process. *See* Fraietta Decl. ¶ 29. Without Plaintiff's involvement the relief secured for the Settlement Class would not have been possible.

Likewise, Class Counsel's performance in this case demonstrates that their representation has been beyond adequate. <u>First</u>, Class Counsel thoroughly investigated the claims and drafted the Class Action Complaint. Class Counsel also spent months collecting the necessary information and engaging in arm's length negotiations with Defendant, leading to the Settlement. And since the Court granted preliminary approval, Class Counsel has worked with the Settlement Administrator and defense counsel to effectuate the class notice and move for Court approval.

<u>Second</u>, the monetary relief achieved by Class Counsel in this Settlement excels in comparison to other BIPA settlements. As detailed above, many BIPA settlements have failed to provide any monetary recovery to class members, have capped the amount class members can recover, or simply have provided far less of a recovery than this one. *See, e.g.*, *Carroll v. Crème de la Crème, Inc.*, 2017-CH-01624 (Cir. Ct. Cook Cnty.) (providing only credit monitoring); *Marshall v. Lifetime Fitness, Inc.*, 2017-CH-14262 (Cir. Ct. Cook Cnty.) ($270 per claimant with credit monitoring, reverting funds to defendant); *Sekura v. L.A. Tan Enterprises, Inc.*, 2015-CH-16694 (Cir. Ct. Cook Cnty.) (paying claimants approximately $150 each); *Prelipceanu v. Jumio Corp.*, 2018-CH-15883 (Cir. Ct. Cook Cnty.) (paying claimants approximately $260 each). The

approximate relief each Settlement Class Member can expect from this Settlement is approximately $535.  *See* Fraietta Decl. ¶ 14.

Moreover, aside from the monetary relief, the non-monetary benefits also demonstrate Plaintiff's and Class Counsel's superb representation of the class.  Specifically, Defendant acknowledges that it will provide all notices and obtain consent as required by BIPA when it collects, utilizes, or stores biometric data.  *See* Settlement ¶ 2.2(a).

The result is more impressive when considering the risks presented.  Defendant denies the material allegations of the Complaint and intends to pursue several legal and factual defenses, including but not limited to whether Defendant actually collected or possessed biometric information or biometric identifiers.  *See* Fraietta Decl. ¶¶ 21-22.  Thus, the unsettled nature of potentially dispositive threshold issues in this case poses a significant risk to Plaintiff's claims and will add to the length and costs of continued litigation.  Taking these realities into account and recognizing the risks involved in any litigation, the relief available to each Settlement Class Member in the Settlement represents a truly excellent result of the Settlement Class.[2]  *See id.* ¶ 23.

---

[2] Furthermore, at the time of settlement, numerous trial courts throughout Illinois had concluded that a BIPA claim accrues for purposes of the calculating the statute of limitations upon the initial capture and use of a plaintiff's fingerprint or hand scan, thus potentially depriving a substantial portion of the Settlement Class of any recovery whatsoever.  *See Smith v. Top Die Casting Co.*, Case No. 2019-L-248 (Cir. Ct. Winnebago Cnty. Mar. 12, 2020); *Robertson v. Hostmark Hospitality Group, Inc.*, Case No. 18-CH-5194 (Cir. Ct. Cook Cnty. Jan. 27, 2020); *Robertson v. Hostmark Hospitality Group, Inc.*, Case No. 18-CH-5194 (Cir. Ct. Cook Cnty. May 29, 2020); *Watson v. Legacy Healthcare Financial Services, LLC*, Case No. 19-CH-3425 (Cir. Ct. Cook Cnty. June 10, 2020); *Mora v. J&M Plating Inc.*, Case No. 21-CH-0022 (Cir. Ct. Winnebago Cnty. July 13, 2021).  On December 15, 2021, the Appellate Court, First District, issued an opinion reaching the opposite conclusion.  *See Watson v. Legacy Healthcare Financial Services, LLC*, -- N.E.3d --, 2021 WL 5917935 (Ill. App. Ct. Dec. 15, 2021). However, the Illinois Supreme Court recently agreed to accept the accrual issue based on a certified question from the Seventh Circuit Court of Appeals.  *See Cothron v. White Castle System, Inc.*, 20 F.4th 1156, 1165-67 (7th Cir. 2021) (certifying accrual question to Illinois Supreme Court).

**B.     The Settlement Was Reached As A Result Of Arm's-Length Negotiations Between The Parties**

The second Rule 23(e)(2) factor looks to whether the parties negotiated the settlement at arm's-length.  *See* Fed. R. Civ. P. 23(e)(2)(B).  Here, the Parties engaged in informal discovery, motion practice, and negotiations over the course of several months, the end result of which was an agreement on all material terms.  *See* Fraietta Decl. ¶¶ 6-9.  Even then, it took the Parties several weeks of additional negotiations to reach the detailed terms of the proposed Settlement now before the Court.  *See id.* ¶ 10.  The arm's-length nature of these negotiations is further confirmed by the Settlement itself:  it provides significant cash payments to Settlement Class Members, and contains no provisions that might suggest fraud or collusion, such as "clear sailing" or "kicker" clauses regarding attorneys' fees.  *See Snyder*, 2019 WL 2103379, at *4 (approving settlement where there is "no clear sailing clause regarding attorneys' fees, and none of the other types of settlement terms that sometimes suggest something other than an arm's length negotiation").

In sum, here the Settlement reached was the result of the Parties' good faith, arm's-length negotiations lasting several months, and it is entirely free from fraud or collusion.  *See Schulte v. Fifth Third Bank*, 2010 WL 8816289, at *4 n.5 (N.D. Ill. 2010) (noting that courts "presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered").

**C.     The Settlement Treats All Settlement Class Members Equally**

The next Rule 23(e)(2) factor considers whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Given that each Settlement Class Member has nearly identical BIPA claims for monetary and injunctive relief, the proposed Settlement treats each of them identically.  In terms of monetary relief, each of the 264 Settlement Class Members will <u>automatically</u> receive a *pro rata* cash payment from the Net

Settlement Fund, which the Parties currently estimate to be $535 per Settlement Class Member. *See* Fraietta Decl. ¶ 14; Settlement ¶ 1.33, 2.1(b)-(d); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999) (where class members are similarly situated with similar claims, equitable treatment is "assured by straightforward pro rata distribution of the limited fund"). And the Settlement also provides for identical prospective relief requiring that if Defendant reinstates the biometric time function it will provide all notices and consent as required by BIPA. *See* Settlement ¶ 2.2(a).

### D. The Relief Secured For The Settlement Class Is Adequate And Warrants Approval

The final and most substantive factor under Rule 23(e)(2) examines whether the relief provided for the class is adequate. *See* Fed. R. Civ. P. 23(e)(2)(C); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227 (N.D. Ill. 2016) ("'The most important factor' in determining whether a proposed settlement satisfies Rule 23 is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement. Specifically, the court must "estimate the likely outcome of a trial' to determine the adequacy of a settlement.") (internal citations omitted). In making this determination, Rule 23 instructs courts to consider: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed method of distributing relief to the class; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreements made in connection with the proposed settlement. *See Ortiz*, 527 U.S. at 855. As explained below, each of these sub-factors demonstrate that the Settlement in this case provides extraordinary relief to the proposed Class and should be approved.

### 1. The Cost, Risk, And Delay Of Further Litigation Compared To The Settlement's Benefits Favors Final Approval

In evaluating the adequacy of the relief provided to the class, courts should first compare the cost, risks, and delay of pursing a litigated outcome to the settlement's immediate benefits.

*See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 amendment. The Settlement here warrants approval because it provides immediate relief to the Settlement Class while avoiding potentially years of complex litigation and appeals. *See Goldsmith v. Tech. Sols. Co.,* 1995 WL 17009594, at *4 (N.D. Ill. Oct. 10, 1995) ("As courts recognize, a dollar obtained in settlement today is worth more than a dollar obtained after a trial and appeals years later."). And, as aforementioned, the Settlement was reached despite the pendency of appeals on various legal issues that could deprive the Settlement Class of any recovery whatsoever, or significantly reduce any prospective recovery. *See supra* § I.A.; *see also In re Southwest Airlines Voucher Litig.,* 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (noting that "legal uncertainties at the time of settlement favor final approval").

Likewise, the Parties also would have been forced to litigate the issue of class certification. *See* Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment (instructing courts to consider the likelihood of certifying the class for litigation in evaluating this sub-factor). Although Plaintiff believes this case is amenable to class certification given Defendant's uniform conduct, that process is by no means risk-free. And even if Plaintiff had succeeded at class certification, summary judgment, and/or trial, Plaintiff expected that Defendant would argue for a reduction in damages based on due process in light of the significant potential statutory damages at issue. *See, e.g., Parker v. Time Warner Entm't Co.,* 331 F.3d 13, 22 (2d Cir. 2003). Protracted litigation would also consume significant resources, including the time and costs associated with discovery, securing expert testimony on complex biometric and data storage issues, and again, motion practice, trial and any appeals. It is possible that "this drawn-out, complex, and costly litigation process…would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now [.]" *In re AT & T Sales Tax Litig.,* 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011). Because the proposed

Settlement offers immediate—and substantial—monetary relief to the Settlement Class and a prompt end to Defendant's alleged misconduct while avoiding the need for extensive and drawn-out litigation, preliminary approval is appropriate. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.").

### 2. The Method Of Distributing Relief To The Settlement Class Members Is Effective And Supports Final Approval

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions § 13:53. The Settlement easily accomplishes that by <u>automatically</u> providing cash payments – estimated to be $535 – to every Settlement Class Member who does not opt-out of the Settlement. *See* Fraietta Decl. ¶ 14; Settlement ¶ 1.33, 2.1(b)-(d).

### 3. The Terms Of The Requested Attorneys' Fees Are Reasonable

The third and final relevant sub-factor considers the adequacy of the relief provided to the class taking into account "the terms of the requested attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel petitioned the Court for an award of reasonable attorneys' fees on December 19, 2022. *See* ECF Nos. 24-26. The Settlement's contemplated method of calculating attorneys' fees (*i.e.*, the percentage-of-the-fund method, *see* Settlement ¶ 8.1) and its limit on attorneys' fees (*i.e.*, no more than thirty-five percent of the Settlement Fund, *see id.*) are reasonable and predicated on the outstanding relief provided to the Settlement Class. To be sure, the percentage of-the-fund method has been used to determine a reasonable fee award in every BIPA class action settlement creating a common fund to date, and a thirty-five percent fee award falls comfortably within the range of typical fee awards in these

cases. *See, e.g., Sekura v. LA Tan Enterprises, Inc.*, 2015-CH-16694 (awarding 40% of fund);

*Zepeda v. Intercontinental Hotels Grp., Inc.*, 2018-CH-02140 (awarding 40% of fund); *Svagdis*

*v. Alro Steel Corp.*, No. 2017-CH-12566 (awarding 40% of fund); *see also* 5 NEWBERG ON

CLASS ACTIONS § 15:83 (noting that, generally, "50% of the fund is the upper limit on a

reasonable fee award from any common fund"). Accordingly, that the Settlement permits the

Court to award thirty-five percent of the fund in attorneys' fees is more than appropriate. These

terms are reasonable and should be finally approved.[3]

For these reasons, Plaintiff and proposed Class Counsel submit that the relief provided by

the Settlement weighs heavily in favor of a finding that it is fair, reasonable, and adequate, and

well within the range of possible approval. As such, the Court should grant final approval.

### E. Class Members Overwhelmingly Support The Settlement

The Seventh Circuit also finds final approval to be warranted where, as here, the class

overwhelmingly approves of the Settlement. *See Schulte v. Fifth Third Bank*, 805 F.Supp.2d

560, 586 (N.D. Ill. 2011) (granting final approval to settlement where only a small percentage of

affected parties opposed the settlement). Here, the Class Members have overwhelmingly

affirmed the Court's judgment at preliminary approval that the Settlement is fair, reasonable, and

adequate. Direct notice was delivered to 99.24% of the Class Members and, to date, **zero** have

objected or requested to be excluded. *See* Declaration of Caroline P. Barazesh ("Barazesh

Decl.") ¶¶ 12-14. Class Members responses to the Notices demonstrates their support for the

Settlement, including the benefits to the Class, the incentive award, and proposed attorneys' fees,

costs, and expenses. The lack of objections supports a finding that the Settlement is fair,

reasonable, and adequate, and should be approved. *See In re Mexico Money Transfer Litig.*, 164

---

[3] Rule 23(e)(3) requires disclosure of agreements made in connection with the proposal. There
are no such agreements beyond the Settlement Agreement. *See* Fraietta Decl. ¶ 28. Thus, this
factor weighs in favor of final approval.

F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that more than "99.9% of class members neither opted out nor filed objections… is strong circumstantial evidence in favor of the settlement"). In endorsing the Settlement, Class Members had easy access to information regarding the Settlement, including important documents such as the Settlement Agreement and Fee Petition, and a summary of the settlement terms and the claims being released. Therefore, the Court should grant final approval.

F.    **The Stage Of The Proceedings And The Amount Of Discovery Completed At The Time Of Settlement Support The Settlement**

The last factor relevant to final approval in the Seventh Circuit concerns the stage of the proceedings and the amount of discovery completed. *See In re AT&T Mobility Wireless Data Services Sales Tax Litigation*, 789 F.Supp.2d 935, 966 (N.D. Ill. 2011) (finding this factor met where parties provided informal discovery that was more than sufficient for effective representation). As noted previously, the parties engaged in informal discovery to better assess the strengths of the claims and defenses presented and to assist in negotiations. Such informal discovery was sufficient to assess the merits of the claims. *See* Fraietta Decl. ¶¶ 6, 7, 10. Accordingly, the parties exchanged sufficient information to find that the Settlement is fair, reasonable, and adequate and should be approved.

II.    **THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES**

At the preliminary approval stage, the Court certified the following Settlement Class for settlement purposes:

> [A]ll individuals who worked or are currently working for Defendant in the State of Illinois, including current or former temporary workers or contractors engaged by Defendant, who had their Biometric Identifiers and/or Biometric Information allegedly collected, captured, received, or otherwise obtained or disclosed by Defendant or its agents, without first signing a written consent form, for the period extending from February 28, 2017, to and through April 8, 2022.

14

Preliminary Approval Order (ECF No. 23) ¶ 9.

The Court should reaffirm that decision on final approval. To merit certification, the Settlement Class must first satisfy the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *see also Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460 (2013). Additionally, because the Settlement provides for monetary relief, the Settlement Class must also satisfy the requirements of Rule 23(b)(3): that (i) common questions of law or fact predominate over individual issues and (ii) a class action is the superior device to resolve the claims. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 at 615–16 (1997). Finally, a certified class must be ascertainable; that is, "defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites and is ascertainable, and thus, should be certified for settlement purposes.

### A. The Class Is Sufficiently Numerous And Joinder Is Impracticable

A class action may proceed when the proposed class is so numerous as to render joinder impractical. *See* Fed R. Civ. P. 23(a)(1). While there is no magic number at which joinder becomes unmanageable, courts have typically found that numerosity is satisfied when the class comprises forty (40) or more people. *See Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (citing collected Seventh Circuit cases). Here, the proposed Settlement Class is sufficiently numerous, as it is comprised of 264 persons. *See* Settlement ¶ 1.33. The numerosity requirement is readily satisfied.

### B. Common Questions Of Law And Fact Predominate

Rule 23(a)(2) instructs that a class may be certified only if there exist "questions of law or fact common to the class." Where, as here, the class seeks monetary relief, the common questions must "predominate over any questions affecting only individual members." Fed. R.

Civ. P. 23(b)(3); *see also* Bell v. PNC Bank, Nat'l Ass'n, 800 F.3d 360, 374 (7th Cir. 2015) ("The question of commonality and predominance overlap in ways that make them difficult to analyze separately."). Common questions are those "capable of class-wide resolution" such "that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." Bell, 800 F.3d at 374 (citing Wal-Mart v. Dukes, 564 U.S. 338, 350 (2011)). "What matters to class certification … [is] the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of this litigation." Wal-Mart, 564 U.S. at 350 (quotation marks omitted). As such, "the critical point is the need for conduct common to members of the class." Suchanek v. Sturm Foods, Inc., 764 F.3d 750, 756 (7th Cir. 2014) (quotation marks omitted). When "the defendant's allegedly injurious conduct differs from plaintiff to plaintiff…no common answers are likely to be found." *Id.* (quotation marks omitted). But when "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," class treatment is appropriate. *Id.*

In this case, all members of the proposed Class share a common statutory BIPA claim that raises many common issues regarding the alleged collection, storage, use, and disclosure of their biometric identifiers or information without consent. Proving a BIPA violation would require the resolution of some of the same factual and legal issues, including: (1) whether the information taken from Settlement Class Members constituted biometric identifiers or biometric information as defined by BIPA; (2) whether such information was taken without the consent required under BIPA; (3) whether Defendant had a BIPA-compliant, publicly available, written policy addressing retention and storage of biometric identifiers and information; and (4) whether such conduct violated BIPA. Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis … [s]uch proof obviates the need to examine each class member's individual position." Golon v. Ohio Savs. Bank, 1999

WL 965593, at *4 (N.D. Ill. Oct. 15, 1999).  Here, for purposes of settlement and in the context of the Settlement Class, the common questions resulting from Defendant's alleged conduct predominate over any individual issues that may exist and can be answered on a class-wide basis based on common evidence maintained by Defendant.  Accordingly, this factor is satisfied.

### C.    Plaintiff's Claims Are Typical Of The Class

Typicality is closely related to commonality.  A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and...[the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted); *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). The requirement is meant to ensure that the named representative's claims "'have the same essential characteristics as the claims of the class at large.'" *Oshana*, 472 F.3d at 514 (citing *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993)).

Here, the claims of Plaintiff and the Settlement Class arise from the same conduct: Defendant's use of finger scan timekeeping and point of sale systems for its Illinois employees allegedly without following BIPA's requirements.  Typicality is met.

Similarly, Class Counsel has regularly engaged in major complex litigation and has extensive experience in class action lawsuits, including BIPA lawsuits.  *See* Fraietta Decl. ¶¶ 17-20.  Accordingly, Plaintiff's counsel will adequately represent the Settlement Class.

### D.    Plaintiff And Proposed Class Counsel Will Adequately Protect The Interests Off The Settlement Class

The final Rule 23(a) prerequisite—adequacy—requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is twofold: "adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interests of the class members." *Starr v. Chi. Cut Steakhouse*, 75 F. Supp. 3d 859, 874 (N.D. Ill. 2014)

17

(quoting *Retired Chi. Police Ass'n*, 7 F.3d at 598). To assess adequacy, courts examine whether "the named plaintiff has [(1)] antagonistic or conflicting claims with other members of the class; or (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Osada v. Experian Info. Sols., Inc.*, 290 F.R.D. 485, 490 (N.D. Ill. 2012) (quoting *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008)) (internal quotation marks omitted).

Here, Plaintiff's interests are entirely representative of and consistent with the interests of the proposed Settlement Class: all have allegedly had their biometric information or identifiers collected and used by Defendants in a manner that Plaintiff argues is inconsistent with the legal protections provided by BIPA. Plaintiff's pursuit of this matter has demonstrated that she has been, and will remain, a zealous advocate for the Settlement Class. Thus, Plaintiff has the same interests as the Settlement Class, and is a suitable representative.

Likewise, Class Counsel will fairly and adequately represent and protect the interests of the Settlement Class. Class Counsel has substantial experience litigating complex consumer class actions, including BIPA class actions. *See* Fraietta Decl. Ex. 2 (Firm Resume). Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.

Accordingly, because Plaintiff will fairly and adequately protect the interests of the Class, and because she and the Settlement Class are amply represented by qualified counsel, the adequacy requirement is satisfied.

### E.   A Class Action Is The Superior Method Of Resolving This Controversy

In addition to its predominance requirement, addressed above at Section II.B, Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The rule sets forth four criteria germane to this requirement: (1) class members' interests in individually controlling individual actions, (2) extent and nature of litigation concerning this controversy already begun by class members, (3) desirability of concentrating litigation in a particular forum, and (4) likely difficulties in managing a class action. *See id.*

The first factor favors certification. There does not appear to be any individual BIPA suits against Defendant, and while BIPA provides for liquidated damages, the relatively modest recovery for each violation ($1,000 or $5,000, depending on whether a violation is negligent or reckless) compared to the high costs of retaining adequate counsel "is not likely to provide sufficient incentive for members of the proposed class to bring their own claims." *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (discussing the FDCPA's $1,000 statutory damages provision); *see also In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018) ("While not trivial, BIPA's statutory damages are also not enough to incentivize individual plaintiffs given the high costs of pursuing discovery on Facebook's software and code base and Facebook's willingness to litigate the case.").

The second factor also weighs in favor of certification. There are no pending other known actions that have progressed to any extent addressing the conduct alleged here against Defendant. Thus, "'the extent and nature of any litigation concerning the controversy already begun by or against class members' is not a factor" counseling against certification. *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012) (quoting Fed. R. Civ. P. 23(b)(3)(B)).

Third, this forum is desirable given that this case concerns a proposed class of Illinoisians seeking relief from Defendant for Illinois-based alleged conduct. *See Barnes*, 310 F.R.D. at 562

(third factor met where defendant conducted business and the events giving rise to plaintiffs' claims occurred within the court's district).

Finally, the fourth factor favors certification as no management problems ought to arise here. As explained above, there is a clear predominance of common issues and Settlement Class Members are readily identifiable from Defendant's records. *See* 2 NEWBERG ON CLASS ACTIONS § 4:72 (5th ed. 2011) ("Courts generally hold that if the predominance requirement is met, then the manageability requirement is met, as well."). Thus, consolidating class members' claims in one proceeding will generate economies of time and expense and promote legal uniformity.

More generally, Rule 23's superiority standard requires that the court recognize "the costs *and benefits* of the class device." *Mullins*, 795 F.3d at 663 (emphasis in original). Here, requiring individual cases "would make no sense," because "each class member here would entail the same discovery and require multiple courts to weigh the same factual and legal bases for recovery." *Bernal v. NRA Group, LLC*, 318 F.R.D. 64, 76 (N.D. Ill. 2016). Rule 23's superiority requirement is therefore satisfied.

### F. The Class Is Ascertainable

Finally, the proposed Settlement Class definition meets Rule 23's implicit requirement of "ascertainability," which "requires that a class … be defined clearly and based on objective criteria." *Mullins*, 795 F.3d at 659. "Whether a class is ascertainable depends on 'the adequacy of the class definition itself,' not 'whether, given an adequate class definition, it would be difficult to identify particular members of the class,'" although Plaintiff here would meet both standards. *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 581 (N.D. Ill. 2018) (citing *Mullins*, 795 F.3d at 658). Here, the Settlement Class definition is based solely on objective criteria: either an Illinois-based employee had his or her fingerprint(s) and/or palmprint scanned by Defendant's biometric equipment during the relevant time period, or did not. Because the class is "defined

clearly [and] membership [is] defined by objective criteria," it is ascertainable. *Mullins*, 795 F.3d at 657. Indeed, Defendant has already ascertained the class and represents that it contains 264 members.

For all these reasons, maintenance of this action as a class action is appropriate. The Court should therefore certify the Settlement Class for settlement purposes.

## **CONCLUSION**

For the reasons described above, Plaintiff respectfully requests that the Court grant her Motion for Final Approval of the Settlement and enter Final Judgment in the form submitted herewith.

Dated: January 10, 2023

Respectfully Submitted,

/s/ *Philip L. Fraietta*
    Philip L. Fraietta

**BURSOR & FISHER, P.A.**
Joseph I. Marchese *
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
jmarchese@bursor.com
pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Julia K. Venditti *
1990 N. California Boulevard, Suite 940
Walnut Creek, CA 94596
Tel:  (925) 300-4455
Fax:  (925) 407-2700
Email:  jvenditti@bursor.com

*\* Pro Hac Vice Application Forthcoming*

*Class Counsel*

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom
ARDC No. 6295219
111 W. Jackson Street, Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

*Local Counsel for Plaintiff and the Settlement Class*